UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO ARCEO,<br>   Plaintiff,<br><br>  v.<br><br>COUNTY OF PLACER, SHERIFF DEVON BELL, CAPTAIN DAVID POWERS, AND CHIEF OF POLICE JAMES MACCOUN,<br><br>   Defendants. | No. 2:20-cv-02334-TLN-DB<br><br>**ORDER** |

  This matter is before the Court on Defendants County of Placer ("the County"), Sheriff Devon Bell ("Sheriff Bell"), and Captain David Power's ("Captain Powers") (collectively, "County Defendants") Motion to Dismiss, (ECF No. 30), and Defendant James Maccoun's ("Defendant Maccoun") Motion to Dismiss (ECF No. 33). Plaintiff Alejandro Arceo ("Plaintiff") opposes each motion. (ECF Nos. 34, 38.) County Defendants and Defendant Maccoun (collectively, "Defendants") filed replies. (ECF Nos. 36, 42.) For the reasons set forth below, the Court GRANTS Defendants' motions to dismiss with leave to amend.

///

1

### I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff alleges on November 27, 2019, Plaintiff was at his home in the City of Roseville experiencing "mental distress" and "expressing suicidal ideations." (ECF No. 1 at 9.) Upon recommendations from Plaintiff's medical providers, his mother called 9-1-1 at approximately 9:40 a.m. (*Id.* at 9–10.) Shortly after, Roseville Police Department officers arrived at Plaintiff's home, "found Plaintiff to be paranoid, anxious, and fidgety, and restrained Plaintiff." (*Id.* at 10.) Plaintiff alleges "[d]espite being dispatched for mental health issues and being told Plaintiff was not under the influence . . . Roseville Police Department officers arrested Plaintiff and placed him in a police vehicle" and drove him to Sutter Roseville Medical Center ("Sutter Roseville") for medical clearance for incarceration. (*Id.* at 10.)

Plaintiff alleges while at Sutter Roseville, the doctor "did not provide adequate medical mental and/or psychiatric evaluation of Plaintiff," and after a seven-minute evaluation the doctor cleared Plaintiff for incarceration. (*See Id.*) Plaintiff alleges Roseville officers "knew or should have known" the doctor did not perform an "adequate medical, mental, and/or psychiatric evaluation of Plaintiff before providing medical clearance." (*Id.*) Roseville officers then transported Plaintiff to South Placer Correction Facility ("SPCF"). (*Id.*) At SPCF, an employee responsible for doing a medical evaluation of Plaintiff determined he was "fit for jail." (*Id.* at 10–11.) Plaintiff alleges this SPCF employee "did not perform an adequate medical, mental, and/or psychiatric evaluation and instead improperly authorized Plaintiff to be put into a holding cell for 'sobering,' when [Plaintiff] was not under the influence of any substance." (*Id.* at 11.)

Plaintiff alleges on November 29, 2019, a representative from Plaintiff's family informed a SPCF employee Plaintiff was suicidal, after discovering Roseville Police Department had not communicated this fact to SPCF. (*Id.*) "Only then did [SPCF] place Plaintiff on safety watch." (*Id.*) Plaintiff alleges later that day an SPCF representative "contacted Plaintiff's family to drop off his psychiatric medication, but, when Plaintiff's family arrived, [SPCF] refused to accept the medication." (*Id.*) Plaintiff alleges "[he] needed medical, psychiatric, and/or mental care,

---

[1]   The following recitation of facts is taken, sometimes verbatim, from Plaintiff's Complaint. (ECF No. 1.)

including but not limited to a 5150 hold," and while in SPCF custody, Plaintiff did not receive adequate medical or mental health care. (*Id.*) Plaintiff alleges as a result of Defendants' acts and omissions, "on Saturday, November 30, 2019, while jailed at [SPCF] Plaintiff pulled his right eye out with his hands." (*Id.*)

Plaintiff filed his Complaint on November 20, 2020, alleging various 42 U.S.C. § 1983 ("§ 1983") claims and state law claims against the Defendants. (ECF No. 1.) County Defendants filed a motion to dismiss on February 11, 2021, (ECF No. 30), and Defendant Maccoun filed his motion to dismiss on February 26, 2021 (ECF No 33). Defendants bring their Motions to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff subsequently filed Oppositions to Defendants' Motions to Dismiss on March 4, 2021, and March 31, 2021. (ECF Nos. 34, 38.) County Defendants filed a Reply on March 11, 2021, (ECF No. 36), and Defendant Maccoun filed a Reply on April 8, 2021 (ECF No. 42).

## II.   STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege

"'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355, F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

*Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true allegations that contradict matters properly subject to judicial notice).

If a complaint fails to state a plausible claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III. ANALYSIS

Defendant Maccoun requests the Court dismiss claims one through ten, twelve, and fourteen against him. (ECF No. 33-1 at 4–7.) Defendant Maccoun argues Plaintiff's claims one through eight fail as a matter of law. (*Id.* at 4.) County Defendants request the Court dismiss claims one through five and eight through fourteen against Sherriff Bell, Captain Powers, and the County. (ECF No. 30-1 at 9–22.) County Defendants argue Plaintiff failed to sufficiently allege facts to bring claims against the County, or Sherriff Bell and Captain Powers in their individual or official capacities. (*Id.* at 11–12, 16.) The Court will first address Plaintiff's claims against Sherriff Bell, Captain Powers, and Defendant Maccoun together as supervisory defendants. Then, the Court will address Plaintiff's claims against the County.

#### A. Defendants' Motions to Dismiss §1983 Claims as Supervisors

Defendants request the Court dismiss Plaintiff's § 1983 claims against Defendant Maccoun, Sherriff Bell, and Captain Powers in their official and individual capacities as supervisors. (ECF Nos. 30, 33.) The Court will address each argument in turn.

///

5

       *i.*  *Individual Capacity*

In § 1983 claims against supervisors in their individual capacity "[a] supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

              a. <u>Supervisor's Personal Involvement in Constitutional Deprivation</u>

Plaintiff alleges Defendant Maccoun, Sheriff Bell, and Captain Powers each oversaw the hiring, training, and policy making of their respective divisions. (ECF No. 1 at 4–5.) Plaintiff further alleges Sheriff Bell, Captain Powers, and Defendant Maccoun's inadequate policies and training led to Plaintiff's constitutional deprivation. (*Id.* at 16, 22–24, 27–28.) Defendant Maccoun contends "Plaintiff does not allege Defendant Maccoun had any personal involvement in the subject incident" and argues Plaintiff's allegations are "wholly conclusory statements." (ECF No. 33-1 at 5.) County Defendants argue Plaintiff did not allege County Defendants "knew of any violations and failed to act to prevent them, participated in or directed any violations, acquiesced to violations, or showed a reckless or callous indifference to Plaintiff's rights." (ECF No. 30-1 at 12–13.) County Defendants further argue Plaintiff's allegations are conclusory. (*Id.* at 12.)

A supervisor can be held liable in their individual capacity, even though a supervisor will rarely be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). Rather, the supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates, . . . his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 646 (internal citations, quotations, and alterations omitted).

Here, in each claim, Plaintiff incorporates allegations that Defendant Maccoun oversees the training and policy making for the City of Roseville Police Department as the Chief of Police, and that County Defendants have the same responsibilities for the Placer Sherriff's Office and the

6

SPCF. (ECF No. 1 at 4–6.) Plaintiff — throughout his first eight claims — makes the allegation that each Defendant "committed themselves and/or authorized the employees, representative, agents or contractors' wrongful conduct, and/or adopted, ratified or approved the conduct after it occurred." (ECF No. 1 at 18.) Although Plaintiff alleges Defendants have authority over subordinates and policy making, these allegations are not sufficient to establish supervisory liability. *Sanchez v. Cnty. of Sacramento*, No. 2:19-cv-01545-MCE-AC, 2021 WL 4066262, at *6 (E.D. Cal. Sept. 7, 2021) ("a plaintiff cannot establish supervisory liability by merely alleging that a defendant has final policy-making authority; there must be a causal relationship between the authority and unconstitutional conduct"). Plaintiff's allegations against Defendants' trainings and policies are conclusory and not sufficient to state a claim for relief. *Twombly*, 550 U.S. at 555 (A pleading is insufficient if it offers mere "labels and conclusions."). Moreover, Plaintiff failed to allege sufficient facts to establish Sheriff Bell, Captain Power, or Defendant Maccoun's personal involvement in Plaintiff's alleged constitutional deprivation.

b.  Causal Connection to Supervisor's Conduct

Plaintiff alleges Defendants and/or Defendants' subordinates deprived Plaintiff of his civil rights, and Defendants knew or should have known about their subordinates' unconstitutional conduct. (ECF No. 1 at 23–32.) In claims one through eight, Plaintiff alleges "as a direct and proximate result of the conduct of Defendants and the Defendants' violation of Plaintiff's civil rights, Plaintiff was harmed and suffered the injuries and damages as alleged herein." (*Id.* at 17, 19, 22, 24, 29, 32, 34.) Defendants argue Plaintiff's claims fail as a matter of law because they do not allege any facts involving Defendants, and Plaintiff's allegations are "conclusory" statements. (ECF No. 30-1 at 12; ECF No. 33-1 at 5.)

"[A] plaintiff cannot establish supervisory liability by merely alleging that a defendant has final policy-making authority; there must be a causal relationship between the authority and unconstitutional conduct." *Sanchez*, 2021 WL 4066262, at *6. "The causal connection is established 'by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Tennyson v. Cnty. of Sacramento*, No. 2:19-CV-

00429-KJM-EFB, 2020 WL 4059568, at *3 (E.D. Cal. Jul. 20, 2020) (quoting *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018)).

Plaintiff's complaint does not sufficiently plead facts showing a causal connection between Defendant Maccoun's conduct or County Defendants' conduct and the infringement of Plaintiff's constitutional rights. *See Id.* at *3 (holding a plaintiff's § 1983 claim against a supervisory defendant in his individual capacity did not survive defendant's motion to dismiss because the complaint was "devoid of factual allegations that [defendant] was personally involved in, knew of or refused to interject himself in the actions of his subordinate officers in a way that caused the infringement of plaintiffs' constitutional rights"). Even though Plaintiff alleges Defendants knew or should have known about their subordinates' conduct, "bare allegations that a supervisor 'knew or should have known' of misconduct are conclusory, and therefore not entitled to the presumption of truth." *Est. of Alejandro Sanchez v. Cnty. of Stanislaus*, No. 1:18-CV-00977-DAD-BAM, 2019 WL 1745868, at *6 (E.D. Cal. Apr. 18, 2019). Plaintiff further alleges the "wrongful acts of Defendants . . . [were] a substantial factor in causing Plaintiff's harm" but does not allege any facts specifying the acts in question. (ECF No. 1 at 17.) County Defendants correctly categorize Plaintiff's allegations as threadbare and correctly argue Plaintiff's complaint "contains no factual allegations that would support individual supervisory liability against Defendants." (ECF No. 30-1 at 16.) Such "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements" are not sufficient to survive Defendants' motion to dismiss. *Iqbal*, 556 U.S. at 678. Plaintiff failed to allege sufficient facts to establish a causal connection between Plaintiff's constitutional deprivation and Defendants' conduct.

### ii.   *Official Capacity*

"In an official-capacity suit, the government entity is the real party in interest and the plaintiff must show that the entity's policy or custom played a part in the federal law violation." *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996). However, when a plaintiff sues a municipality and individual officials in their official capacity, "then the claims against the individuals are duplicative and should be dismissed." *Id.; see also Ctr. for Bio-*

*Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant.").

Here, for each § 1983 claim Plaintiff brings against Sheriff Bell and Captain Powers, Plaintiff brings the same claim against the County. (ECF No. 1 at 14, 18, 20, 23, 25, 34.) The same is true for Plaintiff's § 1983 claims against Defendant Maccoun and the City of Roseville. (*Id.* at 14, 18, 20, 23, 25, 28, 31, 34.) The § 1983 claims against Defendants in their official capacities are, therefore, redundant. *Ctr. for Bio-Ethical Reform, Inc*, 533 F.3d at 799. Therefore, the Court will dismiss the §1983 claims against Sheriff Bell, Captain Powers, and Defendant Maccoun in their official capacities.

Accordingly, the Court GRANTS Defendants' Motions to Dismiss Plaintiff's §1983 allegations against County Defendants and Defendant Maccoun in their official and individual capacities with leave to amend.

### B. Plaintiff's § 1983 Claims Against the County

County Defendants requests the Court dismiss Plaintiff's claims against the County. (*See* ECF No. 30.) Plaintiff alleges six different § 1983 claims against the County: claims one, two, three, four, five, and eight. (ECF No. 1 at 14, 18, 20, 23, 25, 33.) County Defendants argue — as to Plaintiff's first, second, and fifth claims — there is no respondeat superior liability for municipalities in § 1983 claims.[2] (ECF No. 30-1 at 10.) In opposition, Plaintiff argues he sufficiently pleaded his §1983 claims against the County and chose to address his first, second, fourth, and fifth claim in the same argument. (ECF No. 34 at 11.) Accordingly, the Court will

---

[2] Plaintiff's fourth claim fails to allege any specific facts against the County other than the fact the County employs County employees and therefore is characterized as a supervisor. (ECF No. 1 at 23–24.) Plaintiff's eighth claim states, "Defendants DEVON BELL, DAVID POWERS, and DOES 51–100, and each of them, were acting within their scope and employment as law enforcement officers for the COUNTY OF PLACER and the COUNTY OF PLACER is liable for the conduct of said Defendants." (ECF No. 1 at 34.) Plaintiff's fourth and eighth claim against the County are consistent with principles of respondeat superior and are accordingly analyzed with Plaintiff's first, second, and fifth claims.

address the County's respondeat superior defense to Plaintiff's first, second, fourth, fifth, and eighth claims. The Court will next address Plaintiff's third claim alleging a failure to train.

### i. *Respondeat Superior Liability in* Monell *Claims*

The Court will analyze this defense for Plaintiff's first, second, fourth, fifth, and eighth claims against the County. The County argues Plaintiff's first claim fails to plead sufficient facts against the County because there is no respondeat superior liability under § 1983. (ECF No. 30-1 at 10.) Plaintiff alleges the County has "a policy and practice of violating the Constitutional and California State rights of citizens, arrestees, detainees, and/or inmates in their custody or control and are deliberately indifferent to the fact that these violations subject citizens, arrestees, detainees, and/or inmates to a substantial risk of suffering and serious injury." (ECF No. 1 at 11.) Plaintiff alleges the County "consistently demonstrated deliberate indifference to their constitutional obligation to provide minimally adequate care to inmates in their jails." (*Id.* at 16.)

Under § 1983, "a municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). "Instead, it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see Monell*, 436 U.S. at 692. To bring a *Monell* claim against a municipality, a plaintiff must show: (1) he possessed a constitutional right of which he was deprived; (2) the [municipality] had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (citations omitted); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989)).

There must also be a "direct causal link" between the policy or custom and the injury. *Id.* (citing *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000)). "Absent a formal governmental policy, [Plaintiff] must show a longstanding practice or custom" that essentially constitutes a "standard operating procedure of the local government entity . . . so persistent and widespread that it constitutes a permanent and well settled city policy." *See Trevino v. Gates*, 99

F.3d 911, 918 (9th Cir. 1996) (internal quotations and citations omitted). "[A] plaintiff may prove 'the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded.'" *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995). Thus, a single incident will typically not suffice to demonstrate existence of a policy. *McDade*, 223 F.3d at 1141.

Here, Defendants argue Plaintiff "must prove more than a single incident involving a constitutional violation in order to establish the requisite fault on the part of the municipality and the causal connection between the policy and the constitutional deprivation." (ECF No 30-1 at 11) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824.) Plaintiff alleges the County has various deficient policies regarding supervision and training employees. (ECF No. 1 at 26–27.) Further, Plaintiff alleges the County has a policy and practice of violating the Constitutional rights of detainees in their custody and offers the following four examples:

> For instance, between August 11, 2015 and August 14, 2018, numerous inmates were assaulted by COUNTY OF PLACER sheriffs and left injured and without medical care in their cells.
> In May 2017, three COUNTY OF PLACER sheriffs burst into the holding cell containing Paul Bangert, a mentally-ill man. The guards tased, punched, and chocked him, and left him unconscious and without medical care in his cell. When a lawsuit was brought on behalf of the homeless man, it was discovered that the COUNTY OF PLACER had altered the surveillance video and falsified reports to remove evidence of the assault.
> On July 14, 2016, Brendan Coleman, a former Marine was detained by COUNTY OF PLACER for resisting arrest while sleeping in his truck during a break in a long drive. The Marine alleged that he was forced to lay down on the jail floor, kicked in the ribs, and kneed in his shoulder and back. The Marine was left injured in his cell for six to seven hours afterwards without medical care.
> In another case alleging excessive force during an arrest, it was discovered that videos had been altered and/or were missing portions which would have depicted the arrest by the COUNTY OF PLACER sheriffs.

(ECF No. 1 at 13.) Plaintiff argues his Complaint sufficiently alleges "the County's policies and procedures deprived Plaintiff of his constitutional rights. The County has a policy and practice of failing to provide medical care to its inmates" which results in its inmates unnecessary suffering and injury. (ECF No. 34 at 11–12.) However, Plaintiff's examples are inapposite as they do not involve mentally distressed or suicidal inmates at risk for self-harm. (ECF No. 30-1 at 14.)

Instead, Plaintiff's examples, which attempt to establish the County's custom or informal policy of constitutional misconduct, are instances where County employees allegedly physically harmed detainees and then left them injured without medical care. (ECF No. 1. at 13.) These examples are not similar to the alleged misconduct Plaintiff experienced and is not enough to establish a pattern of constitutional violations. *See Connick v. Thompson*, 563 U.S. 51, 62–63 (2011) (finding respondent did not establish a pattern of similar constitutional violations because respondent's examples of alleged similar violations were not similar to the actual violation committed against respondent); *see also Nishimoto v. Cnty. of San Diego*, No. 3:16-cv-01974-BEN-JMA, 2016 WL 8737349, at *7 (S.D. Cal. Nov. 4, 2016) (finding [p]laintiff is required to allege a pattern of similar constitutional violations with some specificity (i.e. that [d]efendant was aware of other suicides occurring under the similar circumstances as [plaintiff]'s suicide)). Applying the reasoning in *Connick* and *Nishimoto*, Plaintiff would need to allege examples that Defendant was aware of other instances where the County provided inadequate medical care for mentally distressed/suicidal plaintiffs and those plaintiffs harmed themselves in the County's care. *Id.*

Plaintiff's examples do not establish a pattern of constitutional violations to show Defendants had a custom or informal policy in place. Plaintiff's allegations against the County for inadequate policies or training cannot rest upon Plaintiff's one personal experience. *See Trevino*, 99 F.3d at 918 ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); *see also Navarro*, 72 F.3d at 714 ("Proof of random acts or isolated events is insufficient to establish custom."). Therefore, Plaintiff failed to allege sufficient facts to pursue a *Monell* claim against the County as a municipality. Accordingly, Court GRANTS Defendant's Motion to Dismiss Plaintiff's claims one, two, four, five, and eight with leave to amend.

///

///

///

       *ii.*  *Failure to Train*

Plaintiff alleges the County failed to properly train employees "as to the Constitutional rights of detainees, and inmates, under Fourth, Eighth and/or Fourteenth Amendments to the United States Constitution." (ECF No. 1 at 21.)

Under § 1983, to allege a municipal liability based on failure to train, a plaintiff must claim that (1) the existing training program is inadequate in relation to the tasks the officers must perform; (2) the failure to train amounts to deliberate indifference to the rights of persons with whom the officers came into contact; and (3) the inadequacy of the training actually caused the deprivation of the alleged constitutional right. *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quotation omitted). Only when a city is on "actual or constructive notice that a particular omission in [its] training program causes city employees to violate citizens' constitutional rights" can the city "be deemed deliberately indifferent." *Id.* at 61. In rare circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64.

          a.  <u>Deliberate Indifference</u>

At issue is whether Plaintiff alleged facts showing the County's failure to train employees amounted to deliberate indifference to the rights of persons with whom County officers encountered. Specifically, Plaintiff argues "Defendants, with deliberate indifference, disregarded a duty to protect the public from official misconduct." (ECF No. 1 at 21.) Further, "[t]he failure to promulgate or maintain constitutionally adequate training was done with deliberate indifference to the rights of Plaintiff and others in his position. (*Id.*) The County contends Plaintiff "failed to show Defendants' deliberate indifference to his constitutional rights." (ECF No. 30-1 at 14.) Further, the County argues Plaintiff's examples are "inapposite because they allege force or altering surveillance video, not self-mutilation." (*Id.*)

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quotation omitted). Only when a city is on "actual or constructive notice that a particular omission in [its] training program causes city employees to violate citizens' constitutional rights" can the city "be deemed deliberately indifferent." *Id.* at 61.

Plaintiff fails to adequately allege a failure to train claim. The Court agrees with the County's argument that Plaintiff's examples do not establish a pattern of similar constitutional violations by untrained employees. Plaintiff's examples to establish alleged deliberate indifference on behalf of the County are:

> For instance, between August 11, 2015 and August 14, 2018, numerous inmates were assaulted by COUNTY OF PLACER sheriffs and left injured and without medical care in their cells.
> In May 2017, three COUNTY OF PLACER sheriffs burst into the holding cell containing Paul Bangert, a mentally-ill man. The guards tased, punched, and chocked him, and left him unconscious and without medical care in his cell. When a lawsuit was brought on behalf of the homeless man, it was discovered that the COUNTY OF PLACER had altered the surveillance video and falsified reports to remove evidence of the assault.
> On July 14, 2016, Brendan Coleman, a former Marine was detained by COUNTY OF PLACER for resisting arrest while sleeping in his truck during a break in a long drive. The Marine alleged that he was forced to lay down on the jail floor, kicked in the ribs, and kneed in his shoulder and back. The Marine was left injured in his cell for six to seven hours afterwards without medical care.
> In another case alleging excessive force during an arrest, it was discovered that videos had been altered and/or were missing portions which would have depicted the arrest by the COUNTY OF PLACER sheriffs.

Plaintiff's examples are inapposite and do not allege self-mutilation. (ECF No. 30-1 at 14.) Since Plaintiff's examples are not similar to the subject incident, the County could not have been on notice that its training program caused "employees to violate citizens' constitutional right." *Connick*, 563 U.S. at 62 ("Because those incidents are not similar to the violation at issue here, they could not have put [defendant] on notice that specific training was necessary to avoid this constitutional violation.").

///

b. <u>Patently Obvious Consequence</u>

Plaintiff argues, "the County's actions and omissions were so patently obvious that no pre-existing pattern of violations is necessary." (ECF No. 34 at 14.) Plaintiff points to the facts that the County placed Plaintiff in a sobering cell when he was not under the influence of any substance, SPCF only put Plaintiff on suicide watch once a family representative informed the jail, and "upon notice that Plaintiff required psychiatric medication, failed to provide [him with] the necessary medication." (*Id*). The County argues, this case is not the rare instance "where the consequence of self-enucleation from placing Plaintiff on safety watch was patently obvious." (ECF No. 30-1 at 14.)

In rare circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64. In *City of Canton*, the court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force as a means to demonstrate when a scenario of failing to train was so obvious that the city would be on notice of its deficiencies. *City of Canton*, 489 U.S. at 390, n. 10. In reference to this example, the court in *Connick* explained "[t]here is no reason to assume that police academy applicants are familiar with the constitutional constraints on the use of deadly force . . . . Under those circumstances there is an obvious need for some form of training." *Connick*, 563 U.S. at 64.

Here, SPCF had already placed Plaintiff on safety watch when he removed his own eye. (EFC No. 1 at 11.) The consequence of Plaintiff harming himself while on safety watch is not as obvious as the consequence associated with deploying untrained armed officers amongst the public to capture fleeing felons. *City of Canton*, 489 U.S. at 390, n.10. A more analogous scenario of an obvious consequence would be if the County did not place the Plaintiff on safety watch after learning he was suicidal and actively harming himself. Additionally, the fact that Plaintiff harmed himself while under SPCF's safety watch is not dispositive that the County failed to train its employees. *Id*. at 391 ("Neither will it suffice to prove that an injury or accident

could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."). "[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.* Plaintiff failed to sufficiently allege facts showing the consequence of Plaintiff removing his own eye is obvious from the County's alleged lack of training.

Accordingly, the Court GRANTS the County's Motion to Dismiss Plaintiff's third §1983 claim for failure to train with leave to amend.

### C. Plaintiff's State Law Claims

"Where all federal claims are dismissed in an action containing both federal and state law claims, a federal court may decline to exercise supplemental jurisdiction over the remaining state law claims." *Tennyson,* 2020 WL 4059568 at *7 (citing 28 U.S.C. § 1367 (c)(3)). Because the Court dismisses Plaintiff's federal claims against Defendant Maccoun and County Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff's state law claims are DISMISSED without prejudice subject to renewal through an amended complaint that adequately states a federal claim against Defendants.

### IV. CONCLUSION

For the foregoing reasons, County Defendants' Motion to Dismiss (ECF No. 30) and Defendant Maccoun's Motion to Dismiss (ECF No. 33) are hereby GRANTED with leave to amend. Plaintiff is hereby granted thirty (30) days from the electronic filing date this Order to file an amended complaint. Defendants shall file a responsive pleading within twenty-one (21) days from the electronic filing date of the amended complaint.

IT IS SO ORDERED.

DATED: February 25, 2022

Troy L. Nunley
United States District Judge