1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ALEJANDRO ARCEO,                      No.  2:20-cv-02334-DAD-DB

12              Plaintiff,                  ORDER GRANTING IN PART AND
                                           DENYING IN PART DEFENDANTS'
13        v.                               MOTION TO DISMISS AND TO STRIKE,
                                           AND DENYING DEFENDANTS' MOTION
14   CITY OF ROSEVILLE, et al.,            FOR A PROTECTIVE ORDER AS MOOT

15              Defendants.                (Doc. Nos. 59, 86)

16

17          This matter is before the court on a motion to dismiss and to strike filed on behalf of

18   defendants Sheriff Devon Bell, Captain David Powers, and the County of Placer (collectively,

19   "moving defendants").  (Doc. No. 59.)  The pending motion was taken under submission without

20   oral argument by the previously assigned district judge on May 24, 2022.[1]  (Doc. No. 69.)  For the

21   reasons explained below, the moving defendants' motion to dismiss and to strike will be granted

22   in part and denied in part.

23                                  **BACKGROUND**

24          This case arises from defendants' alleged failure to provide medical care for plaintiff

25   Alejandro Arceo while he was suffering a psychiatric episode, which allegedly led him to pull out

26

27   _____
     [1]  On August 25, 2022, this case was reassigned to the undersigned.  (Doc. No. 95.)  The
28   undersigned has endeavored to work through a backlog of inherited submitted motions in civil
     cases as quickly as possible since returning to the Sacramento courthouse one year ago.

                                              1

1  his own eye while detained in a Placer County jail.  (Doc. No. 51.)  In his operative first amended

2  complaint ("FAC"), plaintiff alleges as follows.

3  **A.      The Named Defendants**

4         Plaintiff names forty-eight defendants in his FAC, and those defendants generally fall into

5  four broad categories.[2]  The first category includes defendants affiliated with the County of Placer

6  and the Placer County Sheriff's Office.  The three moving defendants fall into this first category.

7  Specifically, defendant County of Placer (the "County") is a public entity that operates and

8  manages the Placer County Sheriff's Office and the South Placer Correctional Facility ("SPCF").

9  (*Id.* at ¶ 14.)  Defendant Bell was the sheriff of the Placer County Sheriff's Office at the time of

10  plaintiff's injury.  (*Id.* at ¶ 31.)  As sheriff, defendant Bell was responsible for the "administration

11  of the South Placer Correctional Facility"; "the promulgation of the policies and procedures and

12  allowance of the practices/customs" alleged in the FAC; and the "hiring, screening, training,

13  retention, supervision, disciplining, counseling, and controlling all Placer Sheriff's Office

14  custodial employees, agents, representatives and/or contractors."  (*Id.*)  Defendant Powers was the

15  Placer County Sherriff's Office's corrections commander assigned to SPCF at the time of

16  plaintiff's injury.  (*Id.* at ¶ 32.)  As the corrections commander, defendant Powers was alleged to

17  hold the same responsibilities as defendant Sheriff Bell.  (*Id.*)  In addition to the three moving

18  /////

19  /////

20  /////

---

21  [2]  In addition, plaintiff purports to name as defendants DOES 1–250 in his FAC.  (Doc. No. 51.)
22  They appear to be the same DOES 1–250 that plaintiff named as defendants in his original
    complaint.  (*See* Doc. No. 1.)  However, it is apparent from plaintiff's FAC that he was able to
23  identify the names of numerous original DOE defendants and that he has specifically named them
    as defendants in his FAC.  (*See* Doc. No. 51; *see also* Doc. No. 67 (explaining that the defendants
24  employed by the County who plaintiff added into the FAC "were first named and referenced to as
    DOES").)  Because plaintiff's FAC fails to allege any facts regarding the specific role of any
25  additional Doe defendants, and the Does appear to simply be left over from plaintiff's original
    complaint, the court will dismiss all remaining Doe defendants from plaintiff's FAC.  *See Lomeli*
26  *v. Cnty. of San Diego*, 637 F. Supp. 3d 1046, 1057 (S.D. Cal. 2022) ("Federal courts will dismiss
    claims against Doe Defendants when the complaint—especially for § 1983 suits—does not 'even
27  minimally explain how any of the unidentified parties [that the plaintiff] seeks to sue personally
    caused a violation of [the plaintiff's] constitutional rights.'") (citation omitted).

28

defendants, plaintiff has named sixteen other defendants who were employed by the Placer County Sheriff's Office at the time of his injury.[3]  (*Id.* at ¶ 15–30.)

The second category of defendants are those who were employed by or represented defendant California Forensic Medical Group, Inc. ("CFMG"), with whom the County contracted with to provide medical, mental health, and dental services for its jails, including SPCF.  (*Id.* at ¶ 34.)  Thirteen named defendants are alleged to have been "employee[s], agent[s], and/or representative[s] of [defendant] CFMG" at the time of plaintiff's injury.[4]  (*Id.* at ¶¶ 35–47.)

The third category of defendants are those affiliated with defendant City of Roseville (the "City"), which is located in the County of Placer and operates and manages the Roseville Police Department.  (*Id.* at ¶ 2.)  Specifically, police officers employed by defendant City arrested plaintiff on November 27, 2019, brought him to Sutter Roseville Hospital to be medically cleared for incarceration and, after he received clearance, transported him to SPCF for booking.  (*Id.* at ¶¶ 68–71, 74.)  Plaintiff alleges that the City was "responsible for the actions and/or inactions and the policies, procedures, and practices/customs of the Roseville Police Department and its respective employees, agents, representatives and/or contractors."  (*Id.* at ¶ 2.)  In addition, ten of the named defendants are alleged to have been employed by the Roseville Police Department at the time of the alleged incident giving rise to this action.[5]  (*Id.* at ¶¶ 3–12.)

/////

[3]  These sixteen named defendants are:  Officer John Burgess, Officer Karl Swinney, Officer Kimberley Stuhr, Officer Brandon Luperini, Deputy Sheriff Nathaniel Giovanetti, Officer Thomas Turner, Officer Megan Burns, Sergeant David Smith, Sergeant Ben Glau, Claudia Chaidez, Deputy Sheriff Sean Robinson, Deputy Sheriff Jarod Collins, Sergeant Jesse Coffer, Deputy Sheriff Jeffrey Bilodeau, Officer Richard Hillman, and Lieutenant John Savage.

[4]  These thirteen named defendants are:  Diana McGinnis, R.N.; Tom Lancaster, Pys.D.; David Duncan, M.D.; Shea Phinney, LMFT; Danielle Hickey, LVN; Jeromy Ellis, R.N.; Dante Ereso, R.N.; Holly Cambra, R.N.; Destiny Wollesen, R.N.; Sierra Gomes; Daniel Weylant; Gursharan Kaur; and Emma Getz.

[5]  These ten named defendants are:  Officer Gary Smith, Officer Curtis Watkins, Officer Adrian Coghlan, Lieutenant Brian Lewis, Officer Daniel Timoney, Officer Darryl Lopez, Officer Derrick Phelps, Sergeant James Haggerty, Officer Lee Hendrick, and Officer Seth Addington.  However, defendant Lopez was dismissed as a defendant in this action pursuant to stipulation on April 4, 2022.  (Doc. No. 53.)

The fourth and final category of named defendants are the medical defendants, which include defendants Sutter Roseville Medical Center ("Sutter Roseville"), Sutter Health, and CEP America-California, which plaintiff alleges are "a corporation, partnership, association, hospital, and/or other entity organized and existing under and by virtue of the laws of the State of California, and was at all times and places mentioned herein engaged in the ownership, operation, and maintenance of hospitals and other medical facilities open to the general public and to paying patients in and about the State of California, County of Placer." (*Id.* at ¶¶ 50, 51, 52.) In addition, defendant Ashley Joel Pilgrim, M.D. was a "physician duly licensed by the State of California to practice medicine and surgery" at the time of the alleged incident. (*Id.* at ¶ 49.)[6]

**B.     The Events of November 27-30, 2019**

On November 27, 2019, plaintiff was at his home in the City of Roseville experiencing "mental distress" and "expressing suicidal ideations." (*Id.* at ¶ 68.) Upon recommendations from plaintiff's medical providers, his mother called 911 at approximately 9:40 a.m. (*Id.*) Shortly thereafter, Roseville Police Department officers arrived at plaintiff's home and "found plaintiff to be paranoid, anxious, and fidgety, and restrained plaintiff." (*Id.* at ¶ 69.) "Despite being dispatched for mental health issues and being told plaintiff was not under the influence or any substance, the Roseville Police Department officers failed to properly handle or de-escalate the situation, and instead arrested plaintiff and placed him in a police vehicle." (*Id.*) The officers drove him to Sutter Roseville Hospital for medical clearance for incarceration. (*Id.* at ¶¶ 70–71.)

/////

---

[6]  Having closely reviewed all the named defendants in this action, the court has two observations that require plaintiff's action. First, the caption to plaintiff's FAC does not name all defendants discussed in the body of his FAC. Plaintiff is thus directed to correct the caption in any forthcoming second amended complaint so that it lists each named defendant against whom plaintiff is asserting claims. Second, although plaintiff filed a "summons returned executed" for three of the defendants added to his FAC, specifically defendants Phinney, Ellis, and Ereso (Doc. Nos. 80, 81, 82), there is nothing on the docket indicating that service of process has been executed for the remaining newly added defendants to the FAC (i.e., twenty-six newly named defendants). Thus, if plaintiff does not intend to pursue claims against the defendants for whom there is no proof of service of process filed on the docket, then plaintiff should not name those defendants in his second amended complaint. Conversely, if plaintiff intends to include those defendants in his second amended complaint, he must effect service of process for them in compliance with the Federal Rules of Civil Procedure.

4

While plaintiff was at Sutter Roseville Hospital, defendants Sutter Roseville, CEP America-California, and Dr. Pilgrim "did not provide adequate medical, mental, and/or psychiatric evaluation of plaintiff," and after a seven-minute evaluation, Dr. Pilgrim cleared plaintiff for incarceration.  (*See id.* at ¶ 72.)  Moreover, plaintiff alleges the Roseville police officers "knew or should have known" that defendants Sutter Roseville, CEP America-California, and Dr. Pilgrim did not perform an "adequate medical, mental, and/or psychiatric evaluation of plaintiff before providing medical clearance."  (*Id.* at ¶ 73.)

Roseville officers then transported plaintiff to SPCF.  (*Id.* at ¶ 74.)  At SPCF, a CFMG nurse responsible for medically evaluating plaintiff determined he was "fit for jail."  (*Id.* at ¶ 76.)  However, plaintiff alleges that this nurse "did not perform an adequate medical, mental, and/or psychiatric evaluation and instead improperly authorized plaintiff to be put into a holding cell for 'sobering,' when [plaintiff] was not under the influence of any substance."  (*Id.*)

On November 29, 2019, a representative from plaintiff's family informed a CFMG therapist that plaintiff was suicidal after discovering that the Roseville Police Department had not communicated this fact to SPCF.  (*Id.* at ¶¶ 78–79.)  Following receipt of this information, correctional officers and a deputy escorted plaintiff to medical staff for an evaluation.  (*Id.* at ¶ 80.)  The officers and deputy heard plaintiff express suicidal ideations and observed fingernail scratches on his wrist, where he had used his fingernails to attempt suicide.  (*Id.*)  A CFMG therapist likewise performed a medical examination, at which time she also heard plaintiff make suicidal statements and saw abrasions on plaintiff's wrists where he used his fingernails to attempt suicide.  (*Id.* at ¶ 81.)  A CFMG nurse placed plaintiff on suicide watch.  (*Id.* at ¶ 80.)  Jail staff transferred plaintiff to a safety cell and provided him with a suicide-prevention gown but left his hands unrestrained.  (*Id.*)

Later that day, another CFMG employee "contacted plaintiff's family to drop off his psychiatric medication, but, when plaintiff's family arrived, [SPCF] refused to accept the medication."  (*Id.* at ¶ 82.)  Plaintiff's family provided a copy of plaintiff's medical records to a Placer County Sheriff's Office employee as well as to a CFMG employee.  (*Id.*)  Approximately three hours after plaintiff was put on suicide watch, a CFMG nurse arrived to give plaintiff an

1   antipsychotic medication, but plaintiff refused the medication.  (*Id.* at ¶ 83.)  Based on plaintiff's

2   medical records, at no point did defendants give plaintiff his psychiatric medication.  (*Id.*)

3     On November 30, 2019, a pair of correctional officers conducted checks on plaintiff and,

4   despite witnessing plaintiff's attempt to pull out his eye, did not stop or restrain plaintiff until it

5   was too late.  (*Id.* at ¶ 84.)  Plaintiff alleges "[he] needed medical, psychiatric, and/or mental care,

6   including but not limited to a 5150 hold," but did not receive adequate medical or mental health

7   care.  (*Id.* at ¶¶ 85–86.)  Plaintiff also alleges that as a result of defendants' acts and omissions

8   and violations of plaintiff's civil rights, "on Saturday, November 30, 2019, while jailed at

9   [SPCF], plaintiff pulled his right eye out with his bare hands."  (*Id.* at ¶ 87.)

10     Based on the foregoing allegations in his FAC, plaintiff asserts the following claims

11   against the moving defendants:  a 42 U.S.C. § 1983 claim for deliberate indifference to his serious

12   medical needs in violation of the Fourth, Eighth, and Fourteenth Amendments of the U.S.

13   Constitution (first claim); a § 1983 claim for failure to protect him against harm in violation of the

14   Fourth, and Fourteenth Amendments of the U.S. Constitution (second claim); a § 1983 claim for

15   failure to train in violation of the Fourth, Eighth, and Fourteenth Amendments of the U.S.

16   Constitution (third claim); a § 1983 claim for failure to supervise in violation of the Fourth,

17   Eighth, and Fourteenth Amendments of the U.S. Constitution (fourth claim); a municipal liability

18   § 1983 claim for an unconstitutional custom or policy in violation of the Fourth, Eighth, and

19   Fourteenth Amendments of the U.S. Constitution (fifth claim); a § 1983 for false imprisonment in

20   violation of the Eighth and Fourteenth Amendments of the U.S. Constitution (eighth claim); a

21   claim under California Government Code § 845.6 for failure to furnish/summon medical care

22   (ninth claim); a state law negligence claim (tenth claim); a claim under California Government

23   Code § 815.6 for failure to perform a mandatory duty (twelfth claim); and a claim under (Doc.

24   /////

25   /////

26   /////

27   /////

28   /////

California Civil Code § 52.1, the California Bane Act (fourteenth claim).  (No. 51.) [7]  In addition,

plaintiff asserts a vicarious liability negligence claim under California Government Code § 815.4

(eleventh claim) as well as a state law professional negligence claim (thirteenth claim) against the

County.  (*Id.*)

**C.    Procedural History**

On March 1, 2022, the then-assigned district judge granted the moving defendants'

previous motion to dismiss plaintiff's complaint but also granted plaintiff leave to amend his

complaint.  (Doc. No. 49.)  On March 31, 2022, plaintiff filed the FAC.  (Doc. No. 51.)

On April 21, 2022, the moving defendants then filed the pending motion to dismiss the

FAC and to strike certain defendants from the FAC.  (Doc. No. 59.)[8]  On May 19, 2022, plaintiff

filed an opposition to the pending motion, in which he conceded that he would dismiss his third,

fifth, and twelfth claims against defendant Powers without prejudice, all claims brought against

defendant Sheriff Bell without prejudice, and his first and seconds claims against the County (but

failing to state whether that dismissal would be with or without prejudice).  (Doc. No. 67 at 8,

/////

/////

/////

---

[7]  As an initial matter, the court observes that the Due Process Clause of the Fourteenth
Amendment governs the rights of pretrial detainees, whereas the Cruel and Unusual Punishment
Clause of the Eighth Amendment governs the rights of convicted prisoners. *See Bell v. Wolfish*,
441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished
prior to an adjudication of guilt in accordance with due process of law."); *Gordon v. Cnty. of
Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) ("[M]edical care claims brought by pretrial
detainees also 'arise under the Fourteenth Amendment's Due Process Clause, rather than under
the Eighth Amendment's Cruel and Unusual Punishment Clause[.]'") (quoting *Castro v. Cnty. of
Los Angeles*, 833 F.3d 1060, 1069–70 (9th Cir. 2016) (en banc)); *see also Castro*, 833 F.3d at
1067–68 ("Inmates who sue prison officials for injuries suffered while in custody may do so
under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted,
under the Fourteenth Amendment's Due Process Clause."). Here, because plaintiff does not
allege that he was a convicted prisoner at the time of the incident, the court will dismiss plaintiff's
§ 1983 claims without leave to amend to the extent they are brought under the Eighth
Amendment.

[8]  All remaining defendants who have been named in plaintiff's FAC and as to whom process has
been served filed an answer to the FAC.

14.)[9]  On May 31, 2022, the moving defendants filed their reply in support of the motion.  (Doc. No. 72.)[10]

### LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

---

[9]  In light of plaintiff's concessions, the court will grant the moving defendants' motion to dismiss defendant Powers from plaintiff's third, fifth, and twelfth claims, defendant Sheriff Bell from all of plaintiff's claims (i.e., plaintiff's first, second, third, fourth, fifth, eighth, ninth, tenth, twelfth, and fourteenth claims), and the County from plaintiff's first and second claims.  However, as defendant correctly points out (Doc. No. 72 at 2), to the extent plaintiff's FAC seeks to sue defendant Sheriff Bell and defendant Powers in their official capacities as to any claims also asserted against the County, then those claims are dismissed without leave to amend as redundant. *See Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (holding that the sheriff was a "redundant defendant" in a § 1983 action brought against both the county and the sheriff in his official capacity); *Garcia v. L.A. Cnty. Metro. Transp. Auth.*, No. 15-cv-00149-DSF-ARG, 2015 WL 641223, at *1 (C.D. Cal. Feb. 13, 2015) (dismissing the plaintiff's official capacity claims brought against the municipal officer as duplicative of those same claims brought against the local government entity).  However, because plaintiff voluntarily dismissed his first and second claims against the County but is still suing defendant Powers in his official capacity, the FAC appears to still—confusingly—be asserting the first and second claims against the County.  *See Mendiola–Martinez v. Arpaio*, 836 F.3d 1239, 1250 (9th Cir. 2016) ("When a county official . . . is sued in [their] official capacity, the claims against [them] are claims against the county.").  The court will nonetheless dismiss those two official capacities claims brought against defendant Powers based on plaintiff's affirmative representation that he is dismissing those two claims against the County.  In any event, claims one and two do not appear to present any unique allegations that would not fit under plaintiff's existing claims for *Monell* liability, i.e., plaintiffs, third, fourth, and fifth claims.  In other words, any allegations intended to be asserted against the County can be included under plaintiff's *Monell* claims in his second amended complaint.

[10]  On August 15, 2022, the moving defendants also filed an amended motion for a protective order to stay discovery as to claims brought against them pending the court's ruling on their motion to dismiss.  (Doc. No. 86.)  Plaintiff opposed that motion on August 22, 2022 (Doc. No. 92), and the moving defendants filed a reply thereto on September 15, 2022 (Doc. No. 98). Because the court will grant the moving defendants' motion to dismiss for the reasons explained below, their motion for a protective order will be denied as having been rendered moot.

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

The court will first address that aspect of the pending motion seeking to strike the sixteen newly added defendants to plaintiff's FAC. The court will then turn to address the primary focus of defendants' motion in which they seek dismissal of all claims asserted against them for failing to state claims upon which relief can be granted.

### A.   Motion to Strike

"The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). A decision whether to strike certain material is committed to the sound discretion of the district court. *Id.*; *Fed. Sav. & Loan Ins. Corp. v Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990).

/////

9

The moving defendants request that the court strike the sixteen County-employed defendants plaintiff added in his FAC, arguing that in the court's prior order granting their motion to dismiss, it did not grant plaintiff leave to amend to add new parties.  (Doc. No. 59-1 at 10.)  In his opposition, plaintiff argues that he has simply substituted named defendants for the Doe defendants that he alleged in his original complaint.  (Doc. No. 67 at 13.)  Plaintiff further contends that this is a case "[w]here an order of dismissal grant[ed] leave to amend without limitation" and that "California district courts generally allow new claims and parties to be submitted in an amended complaint," unless "the granting of leave to amend was limited in scope," in which case, "parties are generally required to seek leave of Court to add new claims." (*Id.*) (quoting *MacRae v. HCR Manor Care Servs., LLC*, No. 14-cv-00715-DOC-RNB, 2018 WL 10164063, at *3 (C.D. Cal. Mar. 5, 2018)).

In the court's prior order granting the moving defendants' motion to dismiss with leave to amend, the court did not explicitly limit the scope of plaintiff's leave to amend his claims.  (*See* Doc. No. 49.)  Therefore, plaintiff's amendment is within the scope of the prior grant of leave to amend, and the moving defendants' motion to strike the new defendants will be denied.  *See Jameson Beach Prop. Owners Ass'n v. United States*, No. 2:13-cv-01025-MCE-AC, 2014 WL 4925253, at *3 (E.D. Cal. Sept. 29, 2014) ("District Courts in this circuit generally allow plaintiffs to add new claims and/or parties to an amended complaint where a prior order of dismissal granted leave to amend without limitation."); *Harrell v. City of Gilroy*, No. 17-cv-05204-LHK, 2018 WL 2383212, at *5 (N.D. Cal. May 25, 2018) (declining to strike the new parties and causes of action where the court's prior order "did not explicitly limit the scope of amendment").

**B.      Motion to Dismiss**

      1.      <u>Plaintiff's Federal Claims Against the County</u>

The moving defendants move to dismiss plaintiff's § 1983 claims brought against the County.  (Doc. No. 59-1 at 13.)  These § 1983 municipal liability claims appear to be brought pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). /////

a.   *Legal Standard for* Monell *Claim*

It is well-established that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691; *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). To state a *Monell* claim against a municipality, plaintiff must allege facts demonstrating "that an 'official policy, custom, or pattern' on the part of [the municipality] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)); *see also Mendiola-Martinez*, 836 F.3d at 1247 (explaining that to establish municipal liability under § 1983, a plaintiff must show a direct causal link between the municipal policy or custom and the alleged constitutional violation).

The Ninth Circuit has recognized four theories for establishing municipal liability under *Monell*: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Here, plaintiff asserts three claims predicated on two of these theories. Specifically, plaintiff's fifth claim is for *Monell* liability predicated on a "pervasive practice or custom" while plaintiff's third and fourth claims pursue *Monell* liability based upon an alleged failure to train and failure to supervise, respectively.

b.   *Analysis of* Monell *Claims*

i.   Unconstitutional Pervasive Practice and Custom (Fifth Claim)

The Supreme Court has established that "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). To sufficiently allege such a claim based upon a practice or custom theory, it must have "sufficient duration, frequency and consistency" that it has "become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001). A few "isolated or sporadic

incidents" are not enough to prove that a city has an unconstitutional custom or practice.  *Id.*; *see also Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995), *as amended on denial of reh'g* (Jan. 12, 1996) ("Proof of random acts or isolated events is insufficient to establish custom."); *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017)[11] (noting that "one or two incidents are insufficient to establish a custom or policy").

In this case, the FAC includes various allegations against the County regarding a custom, policy, or practice (*see* Doc. No. 51 at ¶ 157(a)–(i)), but the allegations lack any specific factual support.  For instance, plaintiff's claim that the County has a custom, policy, and practice of "[f]ail[ing] to provide adequate medical evaluation and treatment, including medical, mental, and/or psychiatric evaluation and treatment" (*id.* at ¶ 157(i)) does not include any details about the specific nature of this alleged policy.  Such vague and conclusory allegations fall short of pleading a cognizable municipal liability claim under *Monell*.  *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (holding that the complaint failed to state a *Monell* claim where it "did not put forth additional facts regarding the specific nature of this alleged 'policy, custom or practice'"); *Rapinoe v. Gore*, No. 21-cv-01779-TWR-WVG, 2022 WL 686461, at *7 (S.D. Cal. Mar. 8, 2022) ("Facts regarding the specific nature of the alleged policy, custom, or practice are required; merely stating the subject to which the policy relates (i.e., inadequate medical care) is insufficient."); *Inman v. Anderson*, 294 F. Supp. 3d 907, 922 (N.D. Cal. 2018) (dismissing a *Monell* claim where the operative complaint was "completely devoid of any facts or details about the actual content of the investigatory policy that purportedly was the 'moving force' behind the alleged constitutional injuries that Plaintiff suffered at the hands of the City Officers").

In his FAC, plaintiff references fourteen examples where individuals were denied medical care while incarcerated in Placer County (Doc. No. 51 at ¶ 90(a)–(n)), but the moving defendants argue in their pending motion that these examples remain inapposite.  (Doc. No. 59-1 at 15.) Indeed, among these examples, only two relate to detainees who were denied mental health care,

---

[11]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    and only one involved a denial of psychiatric medications.  (Doc. No. 51 at ¶ 90(b), (l).)  In his

2    opposition, plaintiff argues that the court should "reconsider narrowly framing plaintiff's

3    municipal claims at this time."  (Doc. No. 67 at 21.)  Plaintiff appears to suggest that the court

4    should view the pattern or practice as encompassing the failure to respond to medical distress

5    rather than to require examples that specifically "involve mentally distressed or suicidal inmates

6    at risk for self-harm," an aspect of the allegations that the court found lacking in its order

7    dismissing the original complaint.  (*See* Doc. No. 49 at 11).[12]  Nevertheless, due to the lack of

8    clarity regarding what the specific nature of the alleged policies or customs are in this case, the

9    court cannot begin to ascertain whether the fourteen examples plaintiff cited effectively exhibit, if

10   proven, the "sufficient duration, frequency and consistency" necessary for establishing an

11   unconstitutional custom or policy.  *Trevino*, 99 F.3d at 918.

12          Because the FAC lacks any factual allegations that could support a plausible *Monell* claim

13   based on an alleged unconstitutional pattern, custom, or policy, the court will grant the moving

14   defendants' motion to dismiss plaintiff's fifth claim against the County with leave to amend.

15                          ii.      Failure to Train and Supervise (Third and Fourth Claims)

16          Under *Monell*, "the inadequacy of police training may serve as the basis for § 1983

17   liability only where the failure to train amounts to deliberate indifference to the rights of persons

18   with whom the police come into contact."  *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158

19   (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Davis v.*

20   *City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (observing there is "no principled reason

21   to apply a different standard to inadequate supervision").  The plaintiff "must demonstrate a

22   'conscious' or 'deliberate' choice on the part of a municipality in order to prevail on a failure to

23   train claim."  *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008) (citation omitted).  "Under this

24   standard, [the plaintiff] must allege facts to show that the [municipality] 'disregarded the known

---

[12]  The undersigned did not issue the order in which it was observed that the cited examples were "inapposite as they do not involve mentally distressed or suicidal inmates at risk for self-harm." (Doc. No. 49 at 11.)  If the moving defendants wish to advance this argument again, they are directed to brief the issue of how similar the prior incidents must be to the present case in order to allege a cognizable *Monell* practice or custom claim and provide authority beyond the prior dismissal order in this case.

or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights.'" *Flores*, 758 F.3d at 1159 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). "[T]he identified deficiency in a [municipality's] training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391; *see also Riggi v. City of Placerville*, No. 2:11-cv-00753-MCE, 2011 WL 6396439, at *5 (E.D. Cal. Dec. 19, 2011) ("The 'closely related' . . . requirement is akin to the tort law causation standard of proximate cause.") (citing *Harper*, 533 F.3d at 1026). In addition, ordinarily, plaintiffs must allege a "pattern of similar constitutional violations by untrained employees" in order to state a claim for deliberate indifference based upon a failure to train. *Flores*, 758 F.3d at 1159 (quoting *Connick*, 563 U.S. at 62).

Here, in connection with his failure to train claim, plaintiff alleges that various defendants, including the County, "failed to maintain adequate and proper training necessary to educate and/or have failed to train deputies and medical staff as to the Constitutional rights of detainees and inmates, under the Fourth, Eighth and/or Fourteenth Amendments to the United States Constitution, to prevent the consistent and systematic failure to provide medical care, and to train their deputies properly on welfare or cell checks." (Doc. No. 51 at ¶ 126.) Plaintiff further alleges that those defendants "failed to train officers, deputies, medical and psychiatric doctors and nurses, and other employees, agents, representatives and/or contractors on the necessary care of inmates suffering from serious medical conditions, and they failed to implement policies and procedures with respect to proper training." (*Id.* at ¶ 128.) In connection with his failure to supervise claim, plaintiff alleges "defendants failed to properly supervisor [sic] their subordinates" and "defendants knew or reasonably should have known of the unconstitutional conduct of their subordinates, including the inadequate policies and procedures for screening, placement, and monitoring of detainees." (*Id.* at ¶ 141, 142.)

These allegations are conclusory, merely parrot certain elements of a *Monell* claim, and are insufficient to state a cognizable claim for relief. *See Young v. City of Visalia*, 687 F. Supp.

14

2d 1141, 1149 (E.D. Cal. 2009) (finding the plaintiffs' allegations insufficient where they merely tracked the elements for *Monell* liability).  In his FAC, plaintiff does not identify how the trainings and supervision were deficient, nor how these alleged deficiencies led the County to deprive plaintiff of his constitutional rights.  *See id.* at 1150 ("[W]ithout identifying the training and hiring practices, how those practices were deficient, and without an identification of the obviousness of the risk involved, the Court cannot determine if a plausible claim is made for deliberately indifferent conduct."); *Mong Kim Tran v. City of Garden Grove*, No. 11-cv-01236-DOC-AN, 2012 WL 405088, at *4 (C.D. Cal. Feb. 7, 2012) (finding the plaintiff's conclusory allegation of inadequate police training insufficient to state a *Monell* claim where the plaintiff did not "plead with any specificity what the insufficient practices were, how they were deficient, or how they specifically caused Plaintiff harm").

Accordingly, the moving defendants' motion to dismiss plaintiff's third and fourth claims for failure to train and supervise against the County will also be granted with leave to amend.[13]

2.     Plaintiff's State Law Claims Against the County

a.     *Failure to Furnish/Summon Medical Care (Ninth Claim)*

The moving defendants seek dismissal of plaintiff's claim brought pursuant to California Government Code § 845.6 for failure to furnish/summon medical care, arguing that (i) plaintiff has failed to allege facts sufficient to state a claim under § 845.6, and (ii) the County is immune from liability under California Government Code §§ 844.6 and 845.6.  (Doc. No. 59-1 at 17.)

---

[13]  In addition, plaintiff purports to bring a false imprisonment claim under § 1983 against various defendants, including the County (eighth claim).  (Doc. No. 51 at ¶¶ 195–208.)  However, this claim is improperly brought against the County because it is predicated on individuals allegedly "acting within their scope and employment as law enforcement officers for [the County] and [thus] [the County] is liable for the conduct of said defendants."  (*Id.* at ¶ 203.)  But it is well-established that a "municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citation omitted); *Horton*, 915 F.3d at 602–03 ("[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker.  A municipality may not, however, be sued under a *respondeat superior* theory.").  Because no cognizable *Monell* theory is alleged against the County in plaintiff's eighth claim for false imprisonment, and that claim rests solely upon a *respondeat superior* theory, this claim will be dismissed without leave to amend.

California Government Code § 844.6, titled "Injuries by and to prisoners," provides that "a public entity is not liable for . . . an injury proximately caused by any prisoner . . . [or] [a]n injury to any prisoner."  Cal. Gov't Code § 844.6(a)(1)–(2); *see also Roy v. Cnty. of Los Angeles*, 114 F. Supp. 3d 1030, 1038 (C.D. Cal. 2015) ("[S]ection 844.6 accords broad public entity immunity . . . .").  The statute's reference to "any prisoner" includes jail detainees.  *See White v. L.A. Cnty. Sheriff's Dep't*, No. 19-cv-04669-DSF-RAO, 2020 WL 5289848, at *10 (C.D. Cal. July 17, 2020) ("California Government Code § 844.6 generally makes public entities immune from liability for an injury to 'any prisoner,' which includes jail detainees.") (citing Cal. Gov't Code § 844.6).  One statutory exception to § 844.6's broad immunity for public entities is the failure to summon medical care in accordance with § 845.6.   *See* Cal. Gov't Code § 845.6.  Specifically, § 845.6 provides that public entities remain vicariously liable for public employees acting within the scope of their employment if the employee "knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."  *Id.*  That exception appears to be the basis for plaintiff's ninth claim brought against the County.  (*See* Doc. Nos. 51 at ¶ 211; 67 at 22.)

To state a claim under § 845.6, plaintiff must allege that: "(1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care."  *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006).  The statute "limits the duty to provide medical care for prisoners to cases where there is actual or constructive knowledge that the prisoner is in need of immediate medical care."  4 Cal. L. Revision Comm'n Reports 801 (1963).  Under California law, "once an inmate is receiving medical care, § 845.6 does not create a duty to provide adequate or appropriate care."  *Resendiz v. Cnty. of Monterey*, No. 14-cv-05495-LHK, 2015 WL 7075694, at *8 (N.D. Cal. Nov. 13, 2015) (citing *Watson v. State*, 21 Cal. App. 4th 836, 841–43 (1993)).  Thus, liability under § 845.6 attaches only when an employee fails to *summon* medical care; the failure to provide further treatment, or to ensure further diagnosis or treatment, is not actionable under § 845.6.  *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1072 (2013); *see also Resendiz*, 2015 WL 3988495, at *6 ("California courts have held that failure to provide necessary medication or treatment cannot be

characterized as a failure to summon medical care claim, nor does the duty to summon immediate medical care pursuant to § 845.6 encompass a duty to assure that medical staff properly diagnose and treat the condition or a duty to monitor the quality of care provided.") (citations omitted). "Thus, once a prisoner is receiving medical care, prison employees are under no further obligation under § 845.6." *Pajas v. Cnty. of Monterey*, No. 16-cv-00945-LHK, 2016 WL 3648686, at *12 (N.D. Cal. July 8, 2016); *see also Castaneda*, 212 Cal. App. 4th at 1070 ("Section 845.6 is very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only, not for certain employee's malpractice in providing that care.").

In his FAC, plaintiff alleges that after receiving information that he was suicidal, jail and CFMG staff medically evaluated him and placed him on suicide watch, transferred him to a safety cell, and provided him with a suicide prevention gown but left his hands unrestrained. (Doc. No. 51 at ¶ 80.) Further, plaintiff alleges that shortly after he had been placed on suicide watch, a CFMG employee attempted to give him antipsychotic medication, but plaintiff refused it, and that based on his medical record, at no point did defendants give him his medication. (*Id.* at ¶ 83.) He alleges that the following day, officers with the Placer County Sheriff's Office did checks on him and, despite witnessing plaintiff's attempt to pull out his eye, did not stop or restrain plaintiff until it was too late. (*Id.* at ¶ 84.) However, at this point, plaintiff's FAC alleges that he had already been medically evaluated and was receiving medical care because the County had put him under suicide watch and into a safety cell. Thus, based on plaintiff's allegations in the FAC, public employees had already been "summoned" to treat plaintiff within the meaning of § 845.6 when his injury occurred. *See Palacios v. Cnty. of San Diego*, No. 20-cv-00450-MMA-DEB, 2020 WL 4201686, at *19 (S.D. Cal. July 22, 2020) ("Because Plaintiff pleads that Ortiz was already under psychiatric care after demonstrating suicidal intent the morning of March 18, § 845.6 does not extend to remove the County's statutory immunity for the subsequent suicide.") (internal citation omitted); *Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1197 (E.D. Cal. 2018) (finding that public employees had been summoned to treat plaintiff within the meaning of § 845.6 where the plaintiff had been placed into a sobering cell, and soon afterward, had been

17

medically evaluated in response to a call of possible drug use); *Germaine-McIver v. Cnty. of Orange*, No. 16-cv-01201-CJC-GJS, 2018 WL 6258896, at *17 (C.D. Cal. Oct. 31, 2018) (finding that § 845.6 did not impose a duty to monitor the quality of care provided where the decedent had a "persisting suicidal state," was under psychiatric care at the time of his suicide, and had remained housed in "the designated housing for mentally ill inmates").

As a result, plaintiff has failed to allege facts sufficient to state a plausible claim under § 845.6 that medical care was not summoned to treat plaintiff.  Because the County is protected by § 844.6 under the facts alleged, the court will grant the moving defendants' motion to dismiss plaintiff's ninth claim with leave to amend.

> b.   *Plaintiff's Other State Law Claims Against the County (Tenth Through Fourteenth Claims)*

In his remaining state law claims brought against the County, plaintiff asserts claims for: vicarious liability predicated on the acts of independent contractors—defendant CFMG and its employees—under California Government Code § 815.4 (eleventh claim); negligence and professional negligence (tenth and thirteenth claims); failure to perform a mandatory duty under California Government Code § 815.6 (twelfth claim); and a violation of the Bane Act (fourteenth claim).  (Doc. No. 51 at 46–61.)  The sole statutory exception to the general public immunity provided under § 844.6 that plaintiff has alleged in his FAC was § 845.6 for failure to summon medical care.  However, as discussed above, the allegations in plaintiff's FAC state that medical care for plaintiff had been summoned:  both public employees and CFMG employees medically evaluated plaintiff and provided him with medical care.  (*Id.* at ¶¶ 80, 81, 83.)  As a result, all of plaintiff's remaining state law claims against the County are unsupported by factual allegations sufficient to overcome the general immunity for public entities provided for under § 844.6.  *See Resendiz*, 2015 WL 3988495, at *5 ("[I]n circumstances where a public entity would not be liable for the acts of its employee, . . . § 815.4 does not operate to broaden the scope of the public entity's liability with respect to independent contractors.") (internal citations omitted); *id.* at *6 (dismissing the plaintiff's professional negligence claim brought against the county based on § 844.6 immunity); *Torbert v. Gore*, No. 14-cv-02911-BEN-NLS, 2016 WL 11447605, at *11

18

(S.D. Cal. Aug. 15, 2016), *report and recommendation adopted*, No. 14-cv-02911-BEN-NLS, 2016 WL 5844934 (S.D. Cal. Oct. 6, 2016) (order granting the defendants' motion for summary judgment in their favor as to the plaintiff's California Government Code § 815.6 claim for failure to discharge a mandatory duty because the court did not find a violation of § 845.6 for failure to summon medical care); *Towery v. State*, 14 Cal. App. 5th 226, 233 (2017), *as modified* (Aug. 14, 2017) ("The Bane Act does not override statutory immunities[.]").  Accordingly, the court will also grant the moving defendants' motion to dismiss all of plaintiff's remaining state law claims asserted against the County with leave to amend.

3.      Plaintiff's Federal Claims Against Defendant Powers in His Individual Capacity

The moving defendants next move to dismiss all of plaintiff's § 1983 claims brought against defendant Powers in his individual capacity, specifically, plaintiff's first, second, eighth, and fourth claims.  (Doc. No. 59-1 at 11.)

a.      *Deliberate Indifference to Serious Medical Needs and Failure to Protect Against Harm (First and Second Claims)*

As an initial matter, the parties have combined their arguments as to plaintiff's first and second claims.  (*See id.*; Doc. No. 67 at 14.)  Because the same legal standard governs both claims, the court considers this approach appropriate, and it will likewise analyze these two claims together.  *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) ("We have long analyzed claims that government officials failed to address pretrial detainees' medical needs using the same standard as cases alleging that officials failed to protect pretrial detainees in some other way."); *Patino v. Cnty. of Monterey*, No. 22-cv-01564-BLF, 2023 WL 375349, at *3 (N.D. Cal. Jan. 24, 2023) ("Moving Parties combine their arguments regarding Claim 1, deliberate indifference to serious medical and mental health needs in violation of the Fourteenth Amendment, and Claim 2, failure to protect from harm in violation of the Fourteenth Amendment.  The Court finds that approach to be sensible, as the same legal standards apply to both claims.").

The Due Process Clause of the Fourteenth Amendment requires that "persons in custody have the established right to not have officials remain deliberately indifferent to their serious

19

1    medical needs." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (quoting

2    *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996)), *overruled on other grounds by Castro*, 833

3    F.3d at 1076 (brackets omitted).  To state a plausible claim for failure to provide medical

4    treatment, a plaintiff must plead sufficient facts to permit the court to infer that (1) the plaintiff

5    had a "serious medical need," and (2) the defendant was "deliberately indifferent" to that need.

6    *Jett*, 439 F.3d at 1096.  In particular, deliberate indifference may be inferred where prison

7    officials or practitioners "deny, delay, or intentionally interfere with medical treatment."

8    *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988); *see also Estelle v. Gamble*, 429

9    U.S. 97, 104–105 (1976) (finding that delays in providing medical care may show deliberate

10    indifference).

11       Here, as to the first prong, plaintiff has alleged that he was suicidal and needed

12    appropriate medical and psychiatric care.  (Doc. No. 51 at ¶ 106.)  In the Ninth Circuit, the risk of

13    suicide or an attempted suicide qualifies as a serious medical need.  *See Conn v. City of Reno*, 591

14    F.3d 1081, 1095 (9th Cir. 2010), *cert. granted, judgment vacated sub nom. City of Reno v. Conn*,

15    563 U.S. 915 (2011), and *opinion reinstated*, 658 F.3d 897 (9th Cir. 2011).  Plaintiff has thus

16    plead sufficient facts to meet the first prong.

17       As to the second prong, the court must apply the objective deliberate indifference standard

18    because plaintiff's claims are based on his status as a pretrial detainee at SPCF.  *See Gordon*, 888

19    F.3d at 1124–25 ("[W]e hold that claims for violations of the right to adequate medical care

20    'brought by pretrial detainees against individual defendants under the Fourteenth Amendment'

21    must be evaluated under an objective deliberate indifference standard.") (quoting *Castro*, 833

22    F.3d at 1070).  Pursuant to this standard, a pretrial detainee must allege:

23

24            (i) the defendant made an intentional decision with respect to the
           conditions under which the plaintiff was confined; (ii) those
           conditions put the plaintiff at substantial risk of suffering serious

25            harm; (iii) the defendant did not take reasonable available measures
           to abate that risk, even though a reasonable official in the

26            circumstances would have appreciated the high degree of risk
           involved—making the consequences of the defendant's conduct

27            obvious; and (iv) by not taking such measures, the defendant caused
           the plaintiff's injuries.

28    *Id.* at 1125.

In their pending motion to dismiss, the moving defendants argue that the FAC does not allege that defendant Powers had any personal involvement in plaintiff's arrest, booking, or medical care, or to have had any contact or communications with plaintiff during the period of November 27–30, 2019, thereby failing to cure the exact deficiencies identified by the court in its prior order dismissing plaintiff's complaint.  (Doc. No. 59-1 at 12) (quoting Doc. No. 49 at 7). Although plaintiff argues in his opposition that the FAC alleges, in paragraph 140, that defendant Powers "was present when several deputies stood idly by for fifteen minutes as Arceo attempted to remove his right eye," the moving defendants correctly point out in their reply that plaintiff's FAC does not actually allege that defendant Powers was even present at SPCF at the time of plaintiff's injury.  (Doc. Nos. 67 at 14; 72 at 4.)  In fact, paragraph 140 of the FAC merely alleges in a conclusory fashion that defendant Powers was "present," without any context as to where and when he was present during the fifteen minutes leading up to plaintiff's injury.  (Doc. No. 51 at ¶ 140.)  Despite plaintiff's argument to the contrary, the FAC simply does not allege that defendant Powers sat idly by for fifteen minutes while plaintiff attempted to pull out his eye.[14]

Furthermore, there are no other facts alleged in the FAC from which the court could plausibly infer that defendant Powers was aware of plaintiff's presence at SPCF, let alone that he was aware of plaintiff's need for medical attention and failed to respond appropriately to it. While plaintiff alleges that defendant Powers, as well as other defendants, "knew or should have known" that plaintiff was "in urgent need of medical, psychiatric, and/or mental evaluation, attention, treatment, and care" and that "there was a substantial risk to plaintiff's health if he went untreated" (Doc. No. 51 at ¶¶ 102, 103), these allegations are "no more than conclusions . . . not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

---

[14]  The FAC does allege that "[o]n November 30, 2019, Officers John G. Burgess and Karl B. Swinney did checks on plaintiff and, despite witnessing plaintiff's attempts to pull out his eye, did not stop or restrain plaintiff until it was too late."  (Doc. No. 51 at ¶ 84.)  However, plaintiff's FAC does not allege that defendant Powers observed plaintiff doing so, and new allegations in a brief in opposition to a motion are irrelevant when deciding a motion to dismiss pursuant to Rule 12(b)(6).  *Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  Therefore, in ruling on the pending motion, the court has not considered plaintiff's new factual allegations, which are not alleged in his FAC.

Because the FAC fails to plausibly allege how defendant Powers personally participated in causing plaintiff's alleged injury, if at all, it does not state a viable claim against him for deliberate indifference under § 1983.  *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation . . . ."); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.").  Accordingly, the court will grant the moving defendants' motion to dismiss plaintiff's first and second claims against defendant Powers with leave to amend.

                    b.    *False Imprisonment (Eighth Claim)*

In their motion to dismiss, the moving defendants argue plaintiff's § 1983 claim brought against defendant Powers for false imprisonment fails because plaintiff has not plausibly alleged that defendant Powers had any personal involvement in plaintiff's arrest or booking.  (Doc. No. 59-1 at 12.)  The court agrees.  Plaintiff's FAC lacks any factual detail regarding what defendant Powers's alleged involvement in the incident was, thus making it unclear whether plaintiff alleges that defendant Powers was directly responsible for plaintiff's alleged injury or liable merely as a supervisor.  *See Shallowhorn v. Molina*, 572 F. App'x 545, 546 (9th Cir. 2014)[15] ("The district court properly dismissed [the plaintiff's] claims against [the prison warden] because [the plaintiff] failed to allege [the prison warden's] personal involvement with any constitutional violation."); *Gillespie v. Cnty. of Alameda*, No. 20-cv-03735-DMR, 2020 WL 5106858, at *2 (N.D. Cal. Aug. 31, 2020) (dismissing the plaintiff's claims against certain defendants where it was unclear whether the plaintiff was alleging that those defendants were directly involved or liable only on a supervisory basis).  Accordingly, plaintiff's § 1983 claim for false imprisonment against defendant Powers will also be dismissed with leave to amend.

/////

/////

---

[15]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

22

1            c.      *Supervisory Liability (Fourth Claim)*

2         The supervisor of an individual who allegedly violated a plaintiff's constitutional rights is

3 not made liable for the violation simply by virtue of that role. *Monell*, 436 U.S. at 691; *Terrell v.*

4 *Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). "A supervisor is only liable for constitutional

5 violations of his subordinates if the supervisor participated in or directed the violations, or knew

6 of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

7 1989). In addition, supervisory liability exists "if supervisory officials implement a policy so

8 deficient that the policy itself is a repudiation of constitutional rights and is the moving force of

9 the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quoting

10 *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987)) (internal quotation marks omitted).

11 Nonetheless, a causal link between a supervisor and the claimed constitutional violation must be

12 specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*,

13 589 F.2d 438, 441 (9th Cir. 1978).

14         As discussed above, plaintiff's FAC does not allege facts plausibly suggesting that

15 defendant Powers was personally involved in plaintiff's injury beyond mere conclusory

16 allegations. (*See, e.g.*, Doc. No. 51 at ¶¶ 140–52.) These conclusory allegations also fail to

17 sufficiently allege that defendant Powers either participated in, acquiesced to, or even knew about

18 the alleged constitutional violations. *See Sullivan v. Biter*, No. 1:15-cv-00243-DAD-SAB, 2017

19 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017) ("Conclusory allegations that various prison

20 officials knew or should have known about constitutional violations occurring against plaintiff

21 simply because of their general supervisory role are insufficient to state a claim under 42 U.S.C. §

22 1983."); *Tandel v. Cnty. of Sacramento*, No. 2:09-cv-00842-MCE, 2012 WL 602981, at *10 (E.D.

23 Cal. Feb. 23, 2012) (dismissing a supervisory liability claim brought against a county sheriff

24 because the "plaintiff's FAC [did] not contain *any* factual allegations demonstrating that [the

25 county sheriff] was aware of plaintiff's constitutional deprivations or of any other wrongful acts

26 by Jail personnel. Thus, nothing in the FAC plausibly suggest[ed] that [the county sheriff]

27 'acquiesced' in the wrongful conduct of his subordinates").

28 /////

Due to these deficiencies regarding defendant Powers's personal involvement, to adequately state a claim for supervisory liability, plaintiff must allege that defendant Powers implemented a constitutionally deficient policy which was the "moving force of the constitutional violation" in order to state a cognizable claim.  *Hansen*, 885 F.2d at 646.  Plaintiff has failed to do so.  In his FAC, plaintiff merely alleges, in a conclusory manner lacking any factual detail, that certain defendants, including defendant Powers, had inadequate policies and training which led to the deprivation of plaintiff's constitutional rights.  (*See* Doc. No. 51 at ¶ 100.)  Plaintiff has not alleged what the problematic polices at issue were, what defendant Powers did to promulgate or implement them, or any facts suggesting that the unspecified policies caused the constitutional violation.  *See Rivera v. Cnty. of San Bernardino*, No. 16-cv-00795-PSG-KS, 2017 WL 5643153, at *4, *5 (C.D. Cal. Mar. 8, 2017) (dismissing the plaintiff's § 1983 claim against a sheriff because there were "no factual allegations supporting the inference that [the sheriff] actually promulgated, participated in, or acquiesced to any of the policies or practices alleged, nor [were] there any factual allegations supporting that [the sheriff] was on notice that constitutional violations were occurring"), *aff'd sub nom. Rivera v. Cnty. of San Diego*, 771 F. App'x 436 (9th Cir. 2019).

Accordingly, the court will grant defendants' motion to dismiss plaintiff's supervisory liability claim against defendant Powers in his individual capacity but will grant plaintiff leave to amend that claim.

### 4.    Plaintiff's State Law Claims Against Defendant Powers

The moving defendants move to dismiss plaintiff's state claims brought against defendant Powers, arguing that they too fail to state a claim because plaintiff fails to allege that defendant Powers had any direct contact with plaintiff or any actual knowledge or reason to know of plaintiff's alleged need for medical care.  (Doc. Nos. 59-1 at 17, 22; 72 at 6.)  Specifically, the moving defendants seek to dismiss plaintiff's state law claims for:  failure to summon medical care under California Government Code § 845.6 (ninth claim); negligence (tenth claim); and protection against interference under the Bane Act (fourteenth claim).

/////

As discussed above in relation to plaintiff's federal claims asserted against defendant Powers, plaintiff's FAC has not alleged sufficient facts plausibly indicating that defendant Powers was personally involved or even aware of plaintiff's need for medical care.  As such, from this complete dearth of factual allegations with respect to defendant Powers, the court also finds that there are insufficient factual allegations in the FAC upon which to assert any of the state law claims against him based on his own actions.  *See Crosby v. Cnty. of Alameda*, No. 20-cv-08529-MMC, 2021 WL 764120, at *2 (N.D. Cal. Feb. 26, 2021) (dismissing the plaintiff's § 845.6 claim against an officer due to the plaintiff's "failure to allege facts sufficient to demonstrate [the officer] knew or had reason to know the decedent was in need of 'immediate medical care' . . ."); *Tandel*, 2012 WL 602981, at *29 (dismissing the plaintiff's negligence claim against certain defendants for whom the FAC failed to allege that they "ever had any personal contact with Plaintiff"); *Graves v. California Dep't of Corr. & Rehab.*, No. 17-cv-01086-JGB-SP, 2019 WL 8168060, at *7 (C.D. Cal. Nov. 14, 2019) (dismissing the plaintiff's Bane Act claim brought against a warden due to the plaintiff's conclusory allegations that she had had actual or constructive knowledge).  Furthermore, plaintiff has failed to allege any specific facts regarding defendant Powers's alleged negligence in hiring, supervising, or training any employee or individual.  Merely alleging that defendant Powers "had a duty to hire, supervise, train and retain employees, agents, representatives, contractors so that they refrain from the conduct and/or omissions alleged herein" and that he "breached this duty" (Doc. No. 51 at ¶¶ 225, 226) is insufficient.  *See Resendiz*, 2015 WL 3988495, at *8; *Pajas*, 2016 WL 3648686, at *14.

Accordingly, the moving defendants' motion to dismiss will be granted as to all of plaintiff's state law claims asserted against defendant Powers with leave to amend.

## CONCLUSION

For the reasons explained above,

1.    The moving defendants' motion to dismiss and strike (Doc. No. 59) is granted in part and denied is part as follows:

a.    The court denies the moving defendants' motion to strike sixteen (16) newly added defendants to the FAC that were employed by the County;

b.    The court grants the moving defendants' motion to dismiss plaintiff's first, third, fourth, fifth, and eighth claims asserted against the moving defendants to the extent those 42 U.S.C. § 1983 claims are brought pursuant to the Eighth Amendment without leave to amend;

c.    The court grants the moving defendants' motion to dismiss all remaining claims asserted against defendant Bell in his individual capacity (i.e., plaintiff's first, second, third, fourth, fifth, eighth, ninth, tenth, twelfth, and fourteenth claims), and defendant Bell is dismissed from this action;

d.    The court grants the moving defendants' motion to dismiss all remaining claims asserted against defendant Bell and defendant Powers in their official capacity (i.e., plaintiff's first, second, third, fourth, fifth, eighth, ninth, tenth, twelfth, and fourteenth claims) without leave to amend;

e.    The court grants the moving defendants' motion to dismiss plaintiff's eighth claim for false imprisonment against the County without leave to amend;

f.    The court grants the moving defendants' motion to dismiss all remaining claims against the County (i.e., plaintiff's first, second, third, fourth, fifth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth claims) with leave to amend;

g.    The court grants the moving defendants' motion to dismiss all claims against defendant Powers in his individual capacity (i.e., plaintiff's first, second, third, fourth, fifth, eighth, ninth, tenth, twelfth, and fourteenth claims) with leave to amend;

h.    To the extent that leave to amend is granted, it is granted only to address the pleading deficiencies identified in this order; and

i.    DOES 1-250 are dismissed from this action;

/////

/////

26

2.    Plaintiff shall file a second amended complaint, or a notice of an intent to proceed only against the defendants who did not bring the pending motion, within twenty-one (21) days from the date of entry of this order;

    a.    If plaintiff elects to file a second amended complaint, he is directed to:  (i) name in the caption each defendant that he intends to assert claims against; (ii) promptly effect service of process of the second amended complaint for all named defendants in compliance with the Federal Rules of Civil Procedure; and (iii) within fourteen (14) days of filing the second amended complaint, file with the court a returned executed summons for every defendant named in the second amended complaint; and

    b.    If plaintiff elects to file a notice of his intent to proceed on the FAC only against the defendants who did not bring the pending motion, plaintiff is directed to:  (i) promptly effect service of process of the FAC for all of the newly added defendants in the FAC, in compliance with the Federal Rules of Civil Procedure;[16] and (ii) within fourteen (14) days of filing the notice of plaintiff's intent to proceed on the FAC, to file with the court a returned executed summons for every defendant named in the FAC;

3.    The Clerk of the Court is directed to update the docket to reflect that defendant Bell has been terminated as a named defendant from this action; and

/////

/////

---

[16]  Specifically, the FAC added the following defendants that were not named in the original complaint:  Officer John Burgess; Officer Karl Swinney; Officer Kimberley Stuhr; Officer Brandon Luperini; Deputy Sheriff Nathaniel Giovanetti; Officer Thomas Turner; Officer Megan Burns; Sergeant David Smith; Sergeant Ben Glau; Claudia Chaidez; Deputy Sheriff Sean Robinson; Deputy Sheriff Jarod Collins; Sergeant Jesse Coffer; Deputy Sheriff Jeffrey Bilodeau, Officer Richard Hillman; Lieutenant John Savage; Diana McGinnis, R.N.; Tom Lancaster, Pys.D.; David Duncan, M.D.; Shea Phinney, LMFT; Danielle Hickey, LVN; Jeromy Ellis, RN; Dante Ereso, R.N.; Holly Cambra, R.N.; Destiny Wollesen, R.N.; Sierra Gomes; Daniel Weylant; Gursharan Kaur; and Emma Getz.  However, the court notes that plaintiff has filed a "summons returned executed" for three of the defendants added to the FAC, specifically, defendants Shea Phinney, LMFT, Jeromy Ellis, RN, and Dante Ereso, R.N.  (Doc. Nos. 80, 81, 82.).

4.     The moving defendants' amended motion for a protective order to stay discovery against them pending the ruling on the motion to dismiss (Doc. No. 86) is denied as having been rendered moot by this order.

IT IS SO ORDERED.

Dated:   **August 21, 2023**                    _Dale A. Drozd_
                                                UNITED STATES DISTRICT JUDGE