UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEJANDRO ARCEO,

        Plaintiff,

    v.

CITY OF ROSEVILLE, et al.,

        Defendants.

No.  2:20-cv-02334-DAD-DB

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

(Doc. Nos. 149, 164)

This matter is before the court on two motions to dismiss, one filed on behalf of defendants Officer John Burgess, Officer Karl Swinney, Officer Kimberley Stuhr, Officer Brandon Luperini, Deputy Sheriff Nathaniel Giovanetti, Officer Thomas Turner, Officer Megan Burns, Sergeant David Smith, Sergeant Ben Glau, Claudia Chaidez, Deputy Sheriff Sean Robinson, Deputy Sheriff Jarod Collins, Sergeant Jesse Coffer, Deputy Sheriff Jeffrey Bilodeau, Officer Richard Hillman, and Lieutenant John Savage (collectively, the "sheriff defendants"), (Doc. No. 164), and the other filed by defendants County of Placer (the "County") and Captain David Powers (collectively, the "County defendants"),[1] (Doc. No. 149).  A hearing by Zoom was held on the pending motions on February 6, 2024.  Attorneys EmilyRose Johns and Sophia

---

[1]  For clarity, the court will refer to the former group of defendants as the "sheriff defendants" and the latter group as the "County defendants," though the court acknowledges that defendant Captain David Powers is also alleged to have worked at the Placer County Sherriff's Office and that the sheriff defendants are also alleged to have been County employees.

Achermann appeared for plaintiff.  Attorney Jonathan B. Paul and Megan Nicole Boelter appeared on behalf of defendants.  For the reasons explained below, the court will grant in part and deny in part both motions to dismiss.

**BACKGROUND**

This case arises from defendants' alleged failure to provide constitutionally adequate medical care for plaintiff Alejandro Arceo while he was suffering a psychiatric episode, which allegedly led him to pull out his own eye while detained in a Placer County jail.  (Doc. No. 114.) The allegations of plaintiff's operative second amended complaint ("SAC") are summarized below.

**A.     The Named Defendants**

Plaintiff names a total of forty-six defendants in his SAC, and those defendants generally fall into four broad categories.  The first category includes defendants affiliated with the County of Placer and the Placer County Sherriff's Office.  The eighteen moving defendants fall into this first category.  Specifically, defendant County of Placer (the "County") is a public entity that operates and manages the Placer County Sherriff's Office and the South Placer Correctional Facility ("SPCF").  (*Id.* at ¶ 13.)  The seventeen other moving defendants were employed by the Placer County Sherriff's Office at the time of plaintiff's injury.  (*Id.* at ¶¶ 14–31.)

The second category of defendants are those who were employed by or represented defendant California Forensic Medical Group, Inc. ("CFMG"), with whom the County contracted to provide medical, mental health, and dental services for its jails, including SPCF.  (*Id.* at ¶ 32.) Thirteen named defendants are alleged to have been "employee[s], agent[s], and/or representative[s] of [defendant] CFMG" at the time of plaintiff's injury.[2]  (*Id.* at ¶¶ 33–46.)

The third category of defendants are those affiliated with defendant City of Roseville (the "City"), which is located in Placer County and operates and manages the Roseville Police Department.  (*Id.* at ¶ 2.)  Specifically, police officers employed by defendant City arrested

---

[2]  These thirteen named defendants are:  Diana McGinnis, R.N.; Tom Lancaster, Pys.D.; David Duncan, M.D.; Shea Phinney, LMFT; Danielle Hickey, LVN; Jeromy Ellis, R.N.; Dante Ereso, R.N.; Holly Cambra, R.N.; Destiny Wollesen, R.N.; Sierra Gomes; Daniel Weylant; Gursharan Kaur; and Emma Getz.

plaintiff on November 27, 2019, brought him to Sutter Roseville Hospital to be medically cleared for incarceration and, after he received clearance, transported him to SPCF for booking.  (*Id.* at ¶¶ 61–67.)  Plaintiff alleges that the City was "responsible for the actions and/or inactions and the policies, procedures, and practices/customs of the Roseville Police Department and its respective employees, agents, representatives and/or contractors."  (*Id.* at ¶ 2.)  In addition, nine of the named defendants are alleged to have been employed by the Roseville Police Department at the time of the alleged incident giving rise to this action.[3]  (*Id.* at ¶¶ 3–12.)

The fourth and final category of named defendants are the medical defendants, which include defendants Sutter Roseville Medical Center ("Sutter Roseville"), Sutter Health, and CEP America-California, which plaintiff alleges are "a corporation, partnership, association, hospital, and/or other entity organized and existing under and by virtue of the laws of the State of California, and was at all times and places mentioned herein engaged in the ownership, operation, and maintenance of hospitals and other medical facilities open to the general public and to paying patients in and about the State of California, County of Placer."  (*Id.* at ¶¶ 48–50.)  In addition, plaintiff has named defendant Ashley Joel Pilgrim, M.D., who was a "physician duly licensed by the State of California to practice medicine and surgery" at the time of the alleged incident.  (*Id.* at ¶ 47.)

**B.     The Events of November 27–30, 2019**

On November 27, 2019, plaintiff was at his home in the City of Roseville, experiencing "mental distress" and "expressing suicidal ideations."  (*Id.* at ¶ 61.)  Upon recommendations from plaintiff's medical providers, his mother called 911 at approximately 9:40 a.m.  (*Id.*)  Shortly thereafter, Roseville Police Department officers arrived at plaintiff's home and "found plaintiff to be paranoid, anxious, and fidgety, and restrained plaintiff."  (*Id.* at ¶ 62.)  "Despite being dispatched for mental health issues and being told plaintiff was not under the influence or any substance, the Roseville Police Department officers failed to properly handle or de-escalate the

---

[3]  These nine named defendants are:  Officer Gary Smith, Officer Curtis Watkins, Officer Adrian Coghlan, Lieutenant Brian Lewis, Officer Daniel Timoney, Officer Derrick Phelps, Sergeant James Haggerty, Officer Lee Hendrick, and Officer Seth Addington.

situation, and instead arrested plaintiff and placed him in a police vehicle." (*Id.*)  The officers drove plaintiff to Sutter Roseville Hospital for medical clearance for incarceration.  (*Id.* at ¶¶ 63–64.)

While plaintiff was at Sutter Roseville Hospital, defendants Sutter Roseville, CEP America-California, and Dr. Pilgrim "did not provide adequate medical, mental, and/or psychiatric evaluation of plaintiff," and after a seven-minute evaluation, Dr. Pilgrim cleared plaintiff for incarceration.  (*Id.* at ¶ 65.)  Moreover, plaintiff alleges the Roseville police officers "knew or should have known" that defendants Sutter Roseville, CEP America-California, and Dr. Pilgrim did not perform an "adequate medical, mental, and/or psychiatric evaluation of plaintiff before providing medical clearance." (*Id.* at ¶ 66.)

Roseville police officers then transported plaintiff to SPCF.  (*Id.* at ¶ 67.)  At SPCF, defendant McGinnis, who was a CFMG nurse responsible for medically evaluating plaintiff, determined that he was "fit for jail." (*Id.* at ¶ 70.)  However, plaintiff alleges that this nurse "did not perform an adequate medical, mental, and/or psychiatric evaluation and instead improperly authorized plaintiff to be put into a holding cell for 'sobering,' when [plaintiff] was not under the influence of any substance." (*Id.*)

On November 29, 2019, a representative from plaintiff's family informed a CFMG therapist—defendant Phinney—that plaintiff was suicidal after discovering that the Roseville Police Department had not communicated this fact to SPCF.  (*Id.* at ¶¶ 72–73.)  Following receipt of this information, defendants Burgess, Burns, and Giovanetti escorted plaintiff to medical staff for an evaluation.  (*Id.* at ¶ 74.)  In the medical examination room, a CFMG registered nurse, defendant Ereso, and defendants Burgess, Burns, and Giovanetti heard plaintiff express suicidal ideations and observed fingernail scratches on his wrist, where he had used his fingernails to attempt suicide.  (*Id.*)  Defendant Ereso placed plaintiff on suicide watch.  (*Id.*)  Defendants Giovanetti and Turner transferred plaintiff to a safety cell and provided him with a suicide-prevention gown but left his hands unrestrained.  (*Id.* at ¶ 75.)

That same day, defendant Phinney likewise performed a medical examination of plaintiff, at which time she also heard plaintiff make suicidal statements and saw abrasions on plaintiff's

wrists where he used his fingernails to attempt suicide.  (*Id.* at ¶ 77.)   She then told defendant Swinney that a Welfare and Institutions Code § 5150 hold was appropriate for plaintiff given his mental state.  (*Id.*)  However, defendant Phinney nevertheless approved plaintiff's placement into the safety cell.  (*Id.* at ¶ 79.)  Plaintiff alleges that defendant Phinney should have temporarily hospitalized him pursuant to § 5150 or otherwise transferred him to the hospital for appropriate psychiatric care.  (*Id.*)

Later that day, another CFMG employee "contacted plaintiff's family to drop off his psychiatric medication, but, when plaintiff's family arrived, [SPCF] refused to accept the medication."  (*Id.* at ¶ 80.)  Plaintiff's family provided a copy of plaintiff's medical records to defendant Chaidez, who was an administrative legal clerk with the Placer County Sheriff's Office, as well as to defendant Phinney.  (*Id.* at ¶¶ 23, 80.)  Approximately three hours after plaintiff was put on suicide watch, a CFMG nurse arrived to give plaintiff an antipsychotic medication, but plaintiff refused the medication.  (*Id.* at ¶ 81.)  "Based on [plaintiff's] medical records, at no point did defendants actually give plaintiff his [psychiatric] medication."  (*Id.*)

On November 30, 2019, a pair of correctional officers—defendants Swinney and Burgess—were assigned to conduct safety checks on plaintiff, and they should have known that medical personnel were not performing checks on plaintiff every four hours as allegedly required by policy.  (*Id.* at ¶ 82.)  Defendants Swinney and Burgess observed plaintiff deteriorate over the course of the day.  (*Id.* at ¶ 85.)  At approximately 5:21 p.m., defendant Swinney checked on plaintiff in the safety cell and witnessed him attempt to pull out his own eye.  (*Id.* at ¶ 86.)  He watched for a minute as plaintiff dug his fingers into his eye socket and manipulated his eye "in an obvious and imminent attempt to remove his own eye."  (*Id.*)  Defendant Swinney did not intervene, did not restrain plaintiff's hands, did not summon assistance from supervisors or other officers, and failed to summon medical care despite witnessing plaintiff "imminently attempt[ing] self-harm."  (*Id.*)  Defendant Swinney walked away and allowed plaintiff to continue committing self-harm.  (*Id.*)  Plaintiff's self-harm was also visible in real time on a video feed to the officers' station where defendants Burgess and Swinney congregated.  (*Id.* at ¶ 87.)  Plaintiff successfully removed his eye at approximately 5:24 p.m.  (*Id.*)  Officers did not respond to plaintiff's cell until

1    approximately 5:30 p.m.  (*Id.*)  No officer or medical personnel entered plaintiff's cell to aid him

2    until approximately 5:35 p.m.  (*Id.* at ¶ 88.)

3         Plaintiff alleges "[he] needed medical, psychiatric, and/or mental care, including but not

4    limited to a 5150 hold," but did not receive adequate medical or mental health care from many of

5    the named defendants.  (*Id.* at ¶¶ 89–90.)  Plaintiff also alleges that as a result of certain

6    defendants' acts, omissions, and violations of plaintiff's civil rights, "on Saturday, November 30,

7    2019, while jailed at [SPCF], plaintiff pulled his right eye out with his bare hands."  (*Id.* at ¶ 91.)

8         Based on the foregoing allegations set forth in his SAC, plaintiff asserts the following

9    claims against one or more of the moving defendants[4]:  a 42 U.S.C. § 1983 claim for deliberate

10   indifference to his serious medical needs in violation of the Fourth and Fourteenth Amendments

11   of the U.S. Constitution brought against all of the moving defendants, except the County (first

12   claim); a § 1983 claim for failure to protect him against harm in violation of the Fourth and

13   Fourteenth Amendments of the U.S. Constitution brought against all of the moving defendants,

14   except the County (second claim); a § 1983 claim for failure to train in violation of the Fourth and

15   Fourteenth Amendments of the U.S. Constitution brought against the County (third claim); a

16   § 1983 claim for failure to supervise in violation of the Fourth and Fourteenth Amendments of the

17   U.S. Constitution brought against defendants County, Powers, and Savage (fourth claim); a

18   municipal liability § 1983 claim for an unconstitutional custom or policy in violation of the

19   Fourth and Fourteenth Amendments of the U.S. Constitution brought against defendants County

20   and Savage (fifth claim); a § 1983 for false imprisonment in violation of the Eighth and

21   Fourteenth Amendments of the U.S. Constitution brought against all of the moving defendants,

22   except defendant Powers (eighth claim); a claim under California Government Code § 845.6 for

23   failure to furnish/summon medical care brought against all of the moving defendants, except

24   defendant Powers (ninth claim); a state law negligence claim brought against all of the moving

25   _____

26   [4]  In this order, the court addresses only plaintiff's claims brought against the moving defendants.
     The court notes that claims discussed herein, as well as other claims not discussed because they

27   were not brought against any of the moving defendants (i.e., plaintiff's sixth and seventh claims),
     were also brought against defendants who elected to answer the SAC rather than filing a motion

28   to dismiss.

defendants, except the County (tenth claim); a vicarious liability negligence claim under California Government Code § 815.4 brought against the County (eleventh claim); a claim under California Government Code § 815.6 for failure to perform a mandatory duty brought against all of the moving defendants (twelfth claim); a state law professional negligence claim brought against the County (thirteenth claim); and a claim under California Civil Code § 52 ("the California Bane Act") brought against all of the moving defendants, except defendant Powers (fourteenth claim).  (Doc. No. 114.)

**C.    Procedural History**

On September 20, 2023, plaintiff Alejandro Arceo filed his operative SAC.  (Doc. No. 114.)  The court had previously dismissed plaintiff's original complaint and first amended complaint following the bringing of motions to dismiss by the County defendants but had granted plaintiff leave to amend.  (Doc. Nos. 49, 110.)  In addition, before plaintiff filed his SAC, on August 31, 2023, the court denied defendants Sutter Roseville Medical Center and Sutter Health's motion for summary judgment.  (Doc. No. 111.)

On October 10, 2023, the County defendants filed the pending motion seeking to strike[5] and dismiss the SAC.  (Doc. No. 149.)  Following stipulation and minute order (Doc. Nos. 154, 155), on November 11, 2023, plaintiff filed his opposition to that motion.  (Doc. No. 160.)  The County defendants filed their reply on November 17, 2023.  (Doc. No. 132.)

Following stipulation and minute order extending the time to file a responsive pleading to plaintiff's SAC, (Doc. Nos. 161, 162), on December 11, 2023, the sheriff defendants filed the

/////

/////

---

[5]  The County defendants request that the court strike the County of Placer from plaintiff's eighth claim as well as the references to the Eighth Amendment throughout the SAC.  (Doc. No. 149-1 at 9.)  The court previously granted the County defendants' motion to dismiss plaintiff's first, third, fourth, and eighth claims asserted against them to the extent those § 1983 claims were brought pursuant to the Eighth Amendment, as well as plaintiff's eighth claim for false imprisonment against County of Placer, both without leave to amend.  (*See* Doc. No. 110 at 26.)  Plaintiff acknowledges that he mistakenly included a reference in his SAC to the Eighth Amendment.  (Doc. No. 160 at 8.)  The court confirms that these claims do not remain in the case.

1     pending motion to dismiss plaintiff's SAC.  (Doc. No. 164.)[6]  On December 26, 2023, plaintiff

2     filed an opposition to that motion.  (Doc. No. 166.)  On January 5, 2024, the sheriff defendants

3     filed their reply in support of the motion.  (Doc. No. 168.)

4         The remaining twenty-eight defendants have filed answers to the SAC.  (Doc. Nos. 118–

5     19, 141, 146, 159.)

6                        **LEGAL STANDARD**

7         The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

8     sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

9     1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

10    sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

11    F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

12    relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

13    claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

14    the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

15    *Iqbal*, 556 U.S. 662, 678 (2009).

16        In determining whether a complaint states a claim on which relief may be granted, the

17    court accepts as true the allegations in the complaint and construes the allegations in the light

18    most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

19    the court need not assume the truth of legal conclusions cast in the form of factual allegations.

20    *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

21    require detailed factual allegations, "it demands more than an unadorned, the-defendant-

22    unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

23    mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

24    *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements

---

25   [6]  The sheriff defendants were named as defendants in plaintiff's first amended complaint.  (*See*

26   Doc. No. 51.)  However, plaintiff failed to properly serve them.  On August 22, 2023, when the
court issued a prior order on a motion to dismiss, the court ordered plaintiff to serve those

27   defendants in accordance with the federal rules.  (Doc. No. 110 at 27.)  Plaintiff has now properly
served the sheriff defendants with his second amended complaint.  (*See* Doc. Nos. 120, 122, 123,

28   125–133, 138, 147, 148, 151.)

of a cause of action, supported by mere conclusory statements, do not suffice.")  Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record.  *Lee v. City of Los Angeles*, 250 F.3d. 668, 688–89 (9th Cir. 2001).

## ANALYSIS

### A.     The Sheriff Defendants' Motion to Dismiss (Doc. No. 164)

#### 1.     Claims Against Defendant Savage

Plaintiff concedes that his allegations against defendant Savage resemble the allegations leveled against defendant Powers that the court found inadequate in its August 22, 2023 order granting the County defendants' motion to dismiss, and he therefore does not argue that those allegations are sufficient, but instead seeks leave to amend.  (Doc. No. 166 at 5 n.1.)  The court agrees that plaintiff's allegations against defendant Savage are deficient and will therefore dismiss all claims asserted against him.

#### 2.     Section 1983 Claims

Plaintiff's first, second, and eighth claims are brought under 42 U.S.C. § 1983.  All of the sheriff defendants, except defendants Burgess and Swinney, move to dismiss plaintiff's first and second claims, whereas all of the sheriff defendants, including defendants Burgess and Swinney, move to dismiss plaintiff's eighth claim.  (*Id.*)

##### a.     *Deliberate Indifference to Serious Medical Needs and Failure to Protect Against Harm (First and Second Claims)*

Because the same legal standard governs plaintiff's first and second causes of action, the court will analyze these two claims together.  *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) ("We have long analyzed claims that government officials failed to address

pretrial detainees' medical needs using the same standard as cases alleging that officials failed to protect pretrial detainees in some other way.").

The Due Process Clause of the Fourteenth Amendment requires that "persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (quoting *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996)), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (brackets omitted).  To state a plausible claim for failure to provide medical treatment, a plaintiff must plead sufficient facts to permit the court to infer that (1) the plaintiff had a "serious medical need," and (2) the defendant was "deliberately indifferent" to that need.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). In particular, deliberate indifference may be inferred where prison officials or practitioners "deny, delay or intentionally interfere with medical treatment." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988); *see also Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (finding that delays in providing medical care may show deliberate indifference).

Here, as to the first prong, the sheriff defendants concede that plaintiff has adequately pled that he had a serious medical need, with plaintiff having alleged that he was suicidal.  (Doc. No. 164-1 at 11.)

As to the second prong, the court must apply the objective deliberate indifference standard because plaintiff's claims are based on his status as a pretrial detainee at SPCF.  *See Gordon*, 888 F.3d at 1124–25 ("[W]e hold that claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard.") (quoting *Castro*, 833 F.3d at 1070).  Pursuant to this standard, a pretrial detainee must allege:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

10

1  *Id.* at 1125.

2      Below, the court will assess whether the allegations of plaintiff's first and second claims

3  brought against various groups of the sheriff defendants meet this legal standard.

4                    i.      Defendants Glau, Smith, Robinson, Collins, Coffer, Bilodeau, and

5                            Hillman

6      The sheriff defendants argue that the SAC is devoid of factual allegations to support any

7  claim of liability against defendants Glau, Smith, Robinson, Collins, Coffer, Bilodeau, and

8  Hillman as to plaintiff's first and second claims for deliberate indifference to medical needs and

9  failure to protect from harm.  (Doc. No. 164-1 at 12.)  The court agrees with the sheriff

10  defendants that plaintiff's SAC is devoid of facts identifying what "interactions," if any,

11  defendants Glau, Smith, Robinson, Collins, Coffer, Bilodeau, and Hillman had with plaintiff

12  during which they would have had the opportunity to observe plaintiff's allegedly obvious and

13  serious need for medical treatment.  (*See id.*)  Plaintiff, in his opposition, argues that his

14  allegations are not confined to just one paragraph, and he describes how the SAC alleges various

15  occurrences leading up to plaintiff's self-enucleation.  (Doc. No. 166 at 12–13.)  However,

16  plaintiff's allegations do not describe how defendants Glau, Smith, Robinson, Collins, Coffer,

17  Bilodeau, and Hillman were involved in any of those alleged events.  Thus, while plaintiff alleges

18  that these defendants had "actual or constructive notice of the [plaintiff's] need for such

19  evaluation, treatment, care, and/or safety measures" (Doc. No. 114 at ¶ 89), these allegations are

20  "no more than conclusions . . . not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

21      Because the SAC fails to plausibly allege how defendants Glau, Smith, Robinson, Collins,

22  Coffer, Bilodeau, and Hillman personally participated in causing plaintiff's alleged injury, if at

23  all, it does not state a viable claim against these defendants for deliberate indifference under

24  § 1983.  *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting

25  under color of state law to be liable under section 1983 there must be a showing of personal

26  participation in the alleged rights deprivation . . . ."); *Ivey v. Bd. of Regents of Univ. of Alaska*,

27  673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in

28  civil rights violations are not sufficient to withstand a motion to dismiss.").  Accordingly, the

1    court will grant the sheriff defendants' motion to dismiss plaintiff's first and second claims

2    against defendants Glau, Smith, Robinson, Collins, Coffer, Bilodeau, and Hillman.

3                ii.          Defendant Chaidez

4        The sheriff defendants contend that the SAC lacks sufficient allegations regarding

5    defendant Chaidez's personal involvement to establish liability with respect to plaintiff's first two

6    claims.  (Doc. No. 164-1 at 13.)  Indeed, as they point out (*see id.*), there are no factual

7    allegations pled that defendant Chaidez had any interactions with plaintiff or that she had the

8    opportunity to observe plaintiff's obvious and serious need for medical treatment.  In his

9    opposition, plaintiff argues that the SAC alleges that defendant Chaidez, despite receiving

10    plaintiff's medical records showing that he was hospitalized for mental health issues three to four

11    days before his imprisonment, did not take any action to protect plaintiff or arrange the mental

12    health care he needed.  (Doc. No. 166 at 13–14.)  However, the SAC does not even allege that

13    defendant Chaidez, an administrative legal clerk with the Placer County Sheriff's Office,

14    reviewed plaintiff's medical records rather than merely receiving delivery of them and routing

15    them to the appropriate person.

16        Because plaintiff has failed to adequately allege that defendant Chaidez had knowledge of

17    plaintiff's serious medical needs, his first and second claims against defendant Chaidez will be

18    dismissed.  *See Bradley-Aboyade v. Crozier*, No. 2:19-cv-01098-TLN-AC, 2021 WL 3472238, at

19    *6 (E.D. Cal. Aug. 6, 2021) ("Lack of such personal knowledge defeats a deliberate indifference

20    claim.").

21             iii.        Burns, Giovanetti, Luperini, Stuhr, and Turner

22        The sheriff defendants next argue that plaintiff's first and second claims against Burns,

23    Giovanetti, Luperini, Stuhr, and Turner fail to state a claim, emphasizing their minimal

24    interactions with plaintiff and their adherence to medical professionals' assessments and

25    directives.  (Doc. No. 164-1 at 14–15.)  In this regard, defendants Luperini, Stuhr, and Burns are

26    alleged to have interacted with plaintiff on November 27, 2019, when they met Roseville police

27    officers and escorted plaintiff through intake, medical evaluation, and into a sobering cell after

28    plaintiff had been medically cleared for incarceration and placement by a registered nurse.

1    Plaintiff alleges that thereafter, on November 29, 2019, defendants Giovanetti and Burns escorted

2    plaintiff to a medical examination room after his family had communicated to defendant Phinney

3    that plaintiff was suicidal and psychotic.  In the examination room, plaintiff was assessed by

4    defendant Ereso, a registered nurse, and, at that time, defendants Giovanetti and Turner allegedly

5    heard plaintiff make suicidal statements and saw abrasions on plaintiff's wrists where he had used

6    his fingernails to attempt suicide.  Plaintiff alleges that as a result of defendant Ereso's

7    assessment of plaintiff's medical needs, plaintiff was placed on suicide watch, resulting in

8    defendants Giovanetti and Turner transferring plaintiff to a safety cell and providing him with a

9    suicide prevention gown, though leaving his hands unrestrained.

10          While the SAC attempts to assert a deliberate indifference and failure to protect claim

11   against defendants Burns, Luperini, Stuthr, Turner, and Giovanetti, plaintiff overlooks the fact

12   that he has alleged that these individuals each witnessed a medical professional assess plaintiff

13   and carried out directives that plaintiff be housed based upon the assessments of those medical

14   professionals.  Thus, plaintiff's own allegations defeat a deliberate indifference claim as brought

15   against these defendants.  *See Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1084 (9th

16   Cir. 2013) (finding that corrections officers "did not act with deliberate indifference" because

17   they "reasonably relied on the expertise of the prison's medical staff"); *Gould v. Cal. Dep't of

18   Corr. & Rehab.*, No. 2:18-cv-01981-JAM-EFB, 2020 WL 704000, at *3 (E.D. Cal. Feb. 12,

19   2020) (concluding that the plaintiff did not sufficiently allege that a nurse had a culpable state of

20   mind constituting deliberate indifference when all she did was follow a doctor's orders);

21   *Windham v. Woffard*, No. 2:18-cv-02656-WBS-DMC, 2021 WL 5909167, at *13 (E.D. Cal. Dec.

22   14, 2021) (holding that certain defendants merely complied with a doctor's order when using a

23   product on the plaintiff's wounds and were therefore not deliberately indifferent to the plaintiff's

24   medical needs), *report and recommendation adopted*, No. 2:18-cv-02656-WBS-DMC, 2022 WL

25   463370, at *13 (E.D. Cal. Feb. 15, 2022), *aff'd*, No. 22-15387, 2023 WL 417907 (9th Cir. Jan.

26   26, 2023).

27          In his opposition, plaintiff contends that defendants Giovanetti and Turner, by leaving

28   plaintiff's hands unrestrained while in the safety cell, allowed him access to the "instruments of

suicide." (Doc. No. 166 at 15.) Plaintiff references the decision in *Deloney v. Cnty. of Fresno*, No. 1:17-cv-01336-LJO-EPG, 2019 WL 1875588, at *2, *7 (E.D. Cal. Apr. 26, 2019), where a district court found that, for purposes of a motion to dismiss, the plaintiff had stated a deliberate indifference claim in alleging that the defendant allowed the plaintiff access to "instrumentalities of suicide," including bed sheets, despite knowledge that plaintiff had previously attempted to hang himself using bed sheets. (Doc. No. 166 at 15.) However, there is a notable distinction between external "instruments," such as bedsheets, and one's own hands, and plaintiff cites no authority suggesting that hands are generally considered to be instruments of suicide or that officers can be deliberately indifferent for not restraining the hands of someone on suicide watch.

In sum, the court concludes plaintiff's first and second causes of action fail to state a claim of deliberate indifference against defendants Burns, Giovanetti, Luperini, Stuhr, and Turner, and will therefore dismiss those claims.

        b.    *False Imprisonment (Eighth Claim)*

The Due Process Clause of the Fourteenth Amendment protects against unlawful deprivations of liberty. *Lee*, 250 F.3d at 683 (recognizing that the Fourteenth Amendment protects the right to be free from detention or incarceration absent due process). Only conduct that "shocks the conscience" is cognizable as a due process violation. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). The Ninth Circuit has found that "a [pretrial] detainee has a constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Lee*, 250 F.3d at 683 (citations and internal quotation marks omitted); *see also Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 620 (9th Cir. 2014). "Cases holding that an incarceration violated the Due Process Clause because defendants should have known the plaintiff was entitled to release fit at least one of two categories: (1) the circumstances indicated to the defendants that further investigation was warranted, or (2) the defendants denied the plaintiff access to the courts for an extended period of time." *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 390–91 (9th Cir. 2014).

/////

14

Here, plaintiff has failed to allege facts supporting a plausible "further investigate" case or a "denied access" case. *See id.* "[T]he 'further investigation' cases have involved significant differences between the arrestee and the true suspect." *Id.* at 391. Here, plaintiff makes no such allegation. Nor does plaintiff allege any facts suggesting that he was denied access to the courts. Instead, plaintiff presents an alternative theory of liability with respect to his false imprisonment claim brought under the Fourteenth Amendment. In his opposition to the sheriff defendants' motion to dismiss, plaintiff argues that despite his obvious need for hospitalization pursuant to § 5150, he was wrongfully detained in jail for three days and was denied hospitalization even though the sheriff defendants knew or should have known that his hospitalization was necessary given that defendant Phinney had acknowledged plaintiff's need for hospitalization on November 29, 2019.[7]  (Doc. No. 166 at 16.)

In their reply, the sheriff defendants emphasize that, based on plaintiff's allegations, except for defendant Swinney, the other sheriff defendants were not made aware that a § 5150 hold was suitable for plaintiff. (Doc. No. 168 at 6.) Instead, they argue, those defendants were allegedly repeatedly informed by medical professionals that plaintiff was fit for incarceration. (*Id.*) Additionally, as to defendant Swinney, the sheriff defendants highlight that, despite Phinney telling Swinney that a § 5150 hold was appropriate, defendant Phinney then allegedly cleared plaintiff for housing within a safety cell at the facility. (*Id.*)

The court agrees with the sheriff defendants that the SAC fails to allege facts plausibly indicating that they knew or should have known that plaintiff should be released from jail and hospitalized. Instead, the SAC alleges that these defendants were advised by medical professionals that plaintiff was fit for incarceration. As noted above, such conduct would not even suffice under the deliberate indifference standard, s*ee Lemire*, 726 F.3d at 1084, let alone the "shock the conscience" standard, which is generally more demanding. *See Hernandez v. Cnty. of Santa Clara*, No. 19-cv-07888-EJD, 2020 WL 3101041, at *5 (N.D. Cal. June 11, 2020) (explaining that the "shock the conscience" standard is more demanding than the deliberate indifference standard); *cf.*

---

[7]  Plaintiff presents no authority for his argument that failure to transfer someone from jail to a hospital is cognizable as a false imprisonment claim under the Fourteenth Amendment.

*Porter*, 546 F.3d at 1137 (explaining that deliberate indifference can "shock the conscience," provided that the defendant had a practical opportunity for actual deliberation).

Furthermore, while plaintiff alleges that Roseville police officers arrested him without probable cause, (Doc. No. 114 at ¶ 178), none of the county sheriff defendants are alleged to have played a role in the probable cause determination or arrest and were not obligated to investigate the ground for plaintiff's arrest. *See Okpoti v. Las Vegas Metro. Police Dep't*, No. 2:15-cv-00110-APG-CWH, 2016 WL 1275607, at *3 (D. Nev. Mar. 31, 2016) (granting the defendant's motion to dismiss or alternatively for summary judgment as to the plaintiff's Fourteenth Amendment claim, stating that the "City . . . was not involved in the probable cause determination and it is not required under the law to investigate the basis for the arrest assuming prompt appearance before a judge") (citing *Rivera*, 745 F.3d at 390–91).

Finally, plaintiff does not allege in his SAC that the sheriff defendants made a false statement, withheld information known to them, or engaged in any conduct designed to prolong plaintiff's detention.  Plaintiff has therefore failed to allege conduct on the part of the sheriff defendants in this regard that "shocks the conscience."  *See Talib v. Guerrero*, No. 15-cv-03825-JAK-DFM, 2015 WL 7428511, at *9 (C.D. Cal. Nov. 20, 2015) (in dismissing the plaintiffs' Fourteenth Amendment due process claim, noting that the plaintiffs made "no allegations that any of the Defendants made a false statement, withheld information, or engaged in any conduct to prolong their detention"); *cf. Shay v. Cnty. of Los Angeles*, No. 15-cv-04607-CAS-RAO, 2015 WL 6513632, at *4 (C.D. Cal. Oct. 26, 2015) (finding that the plaintiff adequately alleged that official conduct "shocked the conscience" where it was alleged that the officer's false statements led to the plaintiff's incarceration for eleven days).

For these reasons, plaintiff's eighth claim as brought against the sheriff defendants is not cognizable and will be dismissed.

### 3.   State Law Claims

Plaintiff asserts the following state law claims against all the sheriff defendants:  a claim under California Government Code § 845.6 for failure to furnish/summon medical care (ninth claim); a state law negligence claim (tenth claim); a claim under California Government Code

§ 815.6 for failure to perform a mandatory duty (twelfth claim); and a claim under California Civil Code § 52.1, the California Bane Act (fourteenth claim).  (No. 114.)  All of the sheriff defendants move to dismiss plaintiff's Bane Act claim.  (*Id.* at 20.)  All of the sheriff defendants, except defendants Burgess and Swinney, also move to dismiss the remaining state law claims.  (*Id.*)

> a.   *Bane Act (Fourteenth Claim)*

The Bane Act, codified at California Civil Code § 52.1, "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'"  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (citation omitted); *see* Cal. Civ. Code § 52.1(b).  Section 52.1 does not require that "the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged."  *Reese*, 888 F.3d at 1043 (quoting *Cornell v. City of San Francisco*, 17 Cal. App. 5th 766, 800 (2017)).

With respect to defendants Stuhr, Luperini, Giovanetti, Turner, Burns, Smith, Glau, Chaidez, Robinson, Collins, Coffer, Bilodeau, Hillman, and Savage, plaintiff has failed to adequately allege an underlying constitutional violation against them, as discussed above.  Therefore, plaintiff's Bane Act claim against them will also be dismissed.  *See Martinez v. Diaz*, No. 21-cv-00281-JWH-RAO, 2021 WL 8825219, at *8 (C.D. Cal. Sept. 13, 2021) ("Plaintiff's Bane Act claim against the [certain defendants] fails as Plaintiff has not sufficiently alleged an underlying constitutional violation by these defendants.").

The sheriff defendants argue that the SAC fails to state a Bane Act claim against defendants Burgess and Swinney because they did not medically clear plaintiff for placement in the safety cell.  (Doc. No. 164-1 at 21.)  However, plaintiff's Bane Act claim against these two defendants appears to rely on his allegations that defendants Burgess and Swinney were deliberately indifferent to his serious medical needs and safety (Doc. No. 114 at ¶ 292), not on allegations of defendants Burgess and Swinney medically clearing plaintiff for jailing.  The sheriff defendants have not moved to dismiss plaintiff's first or second claim against defendants Burgess and Swinney, nor do they argue that plaintiff has not adequately pled that those

defendants were deliberately indifferent to plaintiff's medical needs.  Therefore, the court will decline to dismiss plaintiff's Bane Act claim as brought against defendants Burgess and Swinney. *See M.D. v. Cnty. of San Bernardino*, No. 5:22-cv-01357-SP, 2023 WL 8895699, at *10 (C.D. Cal. Nov. 15, 2023) ("As stated above, the liability of [certain] defendants . . .  in Claim 1 is based on their deliberate indifference to decedent's constitutional rights, so to the extent that claim against them survives, so does Claim 7.  As such, the 4AC states a Bane Act claim against [those] defendants[.]"); *Scalia v. Cnty. of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018) ("[A] prison official's deliberate indifference to serious medical needs is a coercive act . . . ."); *Est. of Miller v. Cnty. of Sutter*, No. 2:20-cv-00577-KJM-DMC, 2020 WL 6392565, at *18 (E.D. Cal. Oct. 30, 2020) ("The plaintiffs' allegations that [certain defendants] were deliberately indifferent support their claims against those defendants under the Bane Act.").

> b.   *Failure to Perform a Mandatory Duty (Twelfth Claim)*

California Government Code § 815.6 provides:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

Cal. Gov't Code § 815.6.  The plain language of § 815.6 demonstrates that it does not apply to the sheriff defendants.  The statute pertains to the liability of a public entity, not to the liability of an individual.  *A. H. v. W. Contra Costa Unified Sch. Dist.*, No. 22-cv-03233-AMO, 2023 WL 6390621, at *7 (N.D. Cal. Sept. 28, 2023) ("Government Code Section 815.6 only authorizes liability against public entities—not individuals.").  Accordingly, plaintiff's twelfth claim asserted against all of the individual sheriff defendants will be dismissed.

> c.   *Remaining State Law Claims Against Defendants Glau, Smith, Robinson, Collins, Coffer, Bilodeu, Hillman, and Chaidez*

As discussed above in relation to plaintiff's deliberate indifference and failure to protect claims, the SAC has not sufficiently alleged facts to plausibly indicate that defendants Glau, Smith, Robinson, Collins, Coffer, Bilodeau and Hillman were personally involved in or even

1   aware of plaintiff's serious need for medical care.  Given the complete dearth of factual

2   allegations in this regard, the SAC provides no basis upon which to assert any of the state law

3   claims against these defendants based upon their own actions.  *See Crosby v. Cnty. of Alameda*,

4   No. 20-cv-08529-MMC, 2021 WL 764120, at *2 (N.D. Cal. Feb. 26, 2021) (dismissing the

5   plaintiff's § 845.6 claim against an officer due to the plaintiff's "failure to allege facts sufficient

6   to demonstrate [the officer] knew or had reason to know the decedent was in need of 'immediate

7   medical care'"); *Tandel v. Cnty. of Sacramento*, No. 2:09-cv-00842-MCE, 2012 WL 602981, at

8   *29 (E.D. Cal. Feb. 23, 2012) (dismissing the plaintiff's negligence claim against certain

9   defendants as to whom the FAC failed to allege that they "ever had any personal contact with

10  Plaintiff"); *Graves v. Cal. Dep't of Corr. & Rehab.*, No. 17-cv-01086-JGB-SP, 2019 WL

11  8168060, at *7 (C.D. Cal. Nov. 14, 2019) (dismissing the plaintiff's Bane Act claim brought

12  against a warden due to the plaintiff's conclusory allegations that she had actual or constructive

13  knowledge).  The court will therefore dismiss the remaining state law claims asserted against

14  defendants Glau, Smith, Robinson, Collins, Coffer, Bilodeu, Hillman, and Chaidez.

15              a.   *State Law Claims Against Defendants Burns, Giovanetti, Luperini, Stuhr,*

16                   *and Turner*

17                   i.   Failure to Furnish/Summon Medical Care (Ninth Claim)

18       The sheriff defendants next argue that defendants Burns, Giovanetti, Luperini, Stuhr, and

19  Turner are immune from plaintiff's state law claims brought under California Government Code

20  § 845.6.  (Doc. No. 164-1 at 19.)  In California, jail officials generally cannot be sued for failing

21  to provide medical care to inmates unless they knew or should have known that the prisoner

22  required immediate medical care.  In this regard, California Government Code § 845.6 provides:

> Neither a public entity nor a public employee is liable for injury
> proximately caused by the failure of the employee to furnish or
> obtain medical care for a prisoner in his custody; but, except as
> otherwise provided by Sections 855.8 and 856, a public employee
> . . . is liable if the employee knows or has reason to know that the
> prisoner is in need of immediate medical care and he fails to take
> reasonable action to summon such medical care.

27  Cal. Gov. Code § 845.6.  A "prisoner" for purposes of this provision includes pretrial detainees.

28  *Id.* § 844.

To state a claim under § 845.6, a plaintiff must allege that: "(1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett*, 439 F.3d at 1099. "California cases have repeatedly limited liability under the statute temporally 'to serious and obvious medical conditions requiring immediate care.'" *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1074 (2013) (citation omitted). The statute "limits the duty to provide medical care for prisoners to cases where there is actual or constructive knowledge that the prisoner is in need of immediate medical care." *Id.* at 1070 (citation omitted). Under California law, "once an inmate is receiving medical care, § 845.6 does not create a duty to provide adequate or appropriate care." *Resendiz v. Cnty. of Monterey*, No. 14-cv-05495-LHK, 2015 WL 7075694, at *8 (N.D. Cal. Nov. 13, 2015) (citing *Watson v. State*, 21 Cal. App. 4th 836, 841–43 (1993). Thus, liability under § 845.6 attaches only when an employee fails to *summon* medical care; the failure to provide further treatment, or to ensure further diagnosis or treatment, is not actionable under § 845.6. *Castaneda*, 212 Cal. App. 4th at 1072.

As an initial matter, plaintiff concedes that the SAC does not state a claim against defendants Giovanetti and Turner under Government Code § 845.6. (Doc. No. 166 at 18 n.5.) Thus, the court will dismiss plaintiff's § 845.6 claim brought against defendants Giovanetti and Turner.

Furthermore, facts alleged in the SAC undermine plaintiff's assertion that defendants Burns, Luperini, and Stuhr failed to summon medical care. The SAC alleges that the interactions of these defendants with plaintiff consisted of taking him to medical after learning that he may be suicidal, having him assessed by a registered nurse who concluded that he was in fact suicidal, and then escorting him to a safety cell and providing him with a safety garment. There are no allegations within the SAC that these defendants had any additional encounters or interactions with plaintiff after he was assessed by medical professionals to be suicidal and placed upon suicide watch on November 29, 2019. Thus, because care was allegedly provided, the alleged actions of these defendants cannot, "as a matter of the plain meaning of the statutory language," be "characterized as a failure to summon medical care." *Nelson v. State*, 139 Cal. App. 3d 72, 81

1   (1982); *see also Resendiz* 2015 WL 7075694, at *8 ("[O]nce an inmate is receiving medical care,

2   § 845.6 does not create a duty to provide adequate or appropriate care.").  Therefore, the court

3   will dismiss plaintiff's § 845.6 claim brought against defendants Burns, Luperini, and Stuhr as

4   well.

ii.   Negligence Claim (Tenth Claim)

6   Because plaintiff's remaining state law claim against defendants Burns, Giovanetti,

7   Luperini, Stuhr, and Turner for negligence is predicated on the purported failure of these

8   defendants to summon medical care to plaintiff, it will also be dismissed.  *See Arias v. Cnty. of*

9   *Los Angeles*, No. 21-cv-06865-MWF-KES, 2022 WL 1557057, at *4 (C.D. Cal. Mar. 29, 2022)

10   ("Because section 845.6 is applicable to cases of suicide, and because the Deputy Defendants had

11   no reason to know that Decedent needed immediate medical care to treat his vulnerability to

12   suicide, the Deputy Defendants and the County are both immune to Plaintiff's negligence claims

13   for Decedent's injuries.").

14   **B.      The County Defendants' Motion to Dismiss**

15   In reviewing the motion to dismiss filed by the County defendants, the court will initially

16   examine plaintiff's claims brought against defendant Powers, starting with the § 1983 claims,

17   followed by consideration of plaintiff's state law claims.  Thereafter, the court will turn to the

18   claims asserted against the County, again beginning with plaintiff's § 1983 claims and then

19   addressing the state law claims.

20   1.      Plaintiff's § 1983 Claims Brought Against Defendant Powers

21   a.      Deliberate Indifference to Serious Medical Needs and Failure to Protect

22   Against Harm (First and Second Claims)

23   With respect to plaintiff's first and second claims brought against defendant Powers in his

24   individual capacity for deliberate indifference and failure to protect from harm, the court has

25   previously noted that plaintiff's complaint did not allege personal participation by defendant

26   Powers.  (Doc. No. 110 at 20.)  Despite being given the opportunity to twice amend his complaint

27   to allege personal participation by defendant Powers in violating his rights, plaintiff's SAC has

28   failed to cure the previously noted deficiencies.

1    In his SAC, plaintiff alleges that defendant Powers

2    failed in his obligation to obtain a mental health opinion from
     responsible health care staff on placement and retention in the safety
3    cell.  He failed to take the necessary steps to ensure plaintiff was
     evaluated.  As a result of his failure, plaintiff, who was in need of
4    acute psychiatric treatment, was denied any mental health treatment
     while he resided in the safety cell for over 24 hours and denied
5    placement in an appropriate therapeutic setting.

6    (Doc. No. 114 at ¶ 151.)  However, there are still no facts alleged from which the court could

7    plausibly infer that defendant Powers was aware of plaintiff's presence at SPCF, let alone that he

8    was aware of plaintiff's serious need for medical attention and failed to respond appropriately to

9    it, a deficiency noted in the court's prior order granting the County defendants' motion to dismiss.

10   (*See* Doc. No. 110 at 21.)  Although plaintiff alleges that defendant Powers, as "the facility

11   commander at the South Placer County Adult Facility . . . . knows or should know that a person

12   placed in a safety cell for danger to self is a person who is at high risk of self-harm," (Doc. No.

13   114 at ¶ 84), and that plaintiff "is informed and believes" that defendant Powers was "present and

14   approved the acts of the deputies, employees, agents, representatives and/or contractors," (*id.* at

15   ¶ 150), as discussed in the last order (Doc. No. 110 at 23), conclusory allegations of this type are

16   insufficient to state a cognizable claim.  *See Sullivan v. Biter*, No. 1:15-cv-00243-DAD-SAB,

17   2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017) ("Conclusory allegations that various prison

18   officials knew or should have known about constitutional violations occurring against plaintiff

19   simply because of their general supervisory role are insufficient to state a claim under 42 U.S.C.

20   § 1983."); *M.B. ex rel. Beverly v. Cal. Dep't of Corr. & Rehab.*, No. 2:17-cv-02395-WBS-DB,

21   2018 WL 4050743, at *3 (E.D. Cal. Aug. 23, 2018) (dismissing the plaintiffs' individual liability

22   § 1983 claim asserted against the warden defendant, stating that the "[p]laintiffs cannot simply

23   rely on the fact that [the warden defendant] was the warden at the prison, and argue that because

24   of his position [the warden defendant] was aware or should have been aware that decedent was

25   suicidal"), *on reconsideration sub nom. M.B. III ex rel. Litem v. Cal. Dep't of Corr. & Rehab.*,

26   No. 2:17-cv-02395-WBS-DB, 2018 WL 5024093 (E.D. Cal. Oct. 16, 2018); *Tandel*, 2012 WL

27   602981, at *10 (dismissing a supervisory liability claim brought against a county sheriff because

28   the "plaintiff's FAC [did] not contain *any* factual allegations demonstrating that [the county

22

1  sheriff] was aware of plaintiff's constitutional deprivations or of any other wrongful acts by Jail

2  personnel" and that therefore "nothing in the FAC plausibly suggest[ed] that [the county sheriff]

3  'acquiesced' in the wrongful conduct of his subordinates").

4       Accordingly, the County defendants' motion to dismiss plaintiff's first and second claims

5  brought against defendant Powers will be granted.

6              b.       Supervisory Liability (Fourth Claim)

7       Plaintiff next attempts to hold defendant Powers liable under a theory of supervisory

8  liability.  (Doc. No. 114 at 36.)  A supervisor may be held liable under § 1983 "if there exists

9  either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient

10  causal connection between the supervisor's wrongful conduct and the constitutional violation."

11  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646

12  (9th Cir. 1989)).  To be liable, the supervisor's participation could include "his 'own culpable

13  action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in

14  the constitutional deprivations of which the complaint is made,' or 'conduct that showed a

15  reckless or callous indifference to the rights of others.'"  *Id.* at 1205–06 (quoting *Larez v. City of

16  Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)).  "A supervisor is only liable for constitutional

17  violations of his subordinates if the supervisor participated in or directed the violations, or knew

18  of the violations and failed to act to prevent them.  There is no respondeat superior liability under

19  section 1983."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

20       In his SAC, plaintiff alleges that defendant Powers's conduct involved failing "to obtain a

21  mental health opinion from responsible health care staff on placement and retention in the safety

22  cell" and "failing to properly supervise [his] subordinates."  (Doc. No. 114 at ¶¶ 151, 152.)

23  Plaintiff also alleges that defendant Powers "knew or reasonably should have known of the

24  unconstitutional conduct of [his] subordinates, including the inadequate policies and procedures

25  for screening, placement, and monitoring of detainees."  (*Id.* at ¶ 153.)

26       However, as discussed above, there are no facts alleged that if proven would show that

27  defendant Powers was aware of plaintiff's serious medical needs.  Furthermore, there are no

28  specific facts alleged to establish that defendant Powers directed, participated in, or knew that his

23

1   subordinates were not following jail policy or that his subordinates were deliberately indifferent

2   to plaintiff's serious medical needs.  *See Taylor*, 880 F.2d at 1045.  As previously noted,

3   plaintiff's assertions that he "is informed and believes" that defendant Powers was "present and

4   approved the acts of the deputies, employees, agents, representatives and/or contractors" (*id.* at ¶

5   150) are simply too conclusory.  *See Sullivan*, 2017 WL 1540256, at *1; *Tandel*, 2012 WL

6   602981, at *10.

7        In his opposition to the County defendants' motion to dismiss, plaintiff argues that he has

8   alleged that defendant Powers as facility commander was responsible by policy and pursuant to

9   California Code of Regulations Title § 1055[8] for approving plaintiff's placement in a safety cell

10  and ensuring that plaintiff received mental health evaluations every twelve hours once he was so

11  placed.  (Doc. No. 160 at 14) (citing Doc. No. 114 at ¶ 84).  Plaintiff argues that defendant

12  Powers failed to perform these supervisory duties and, as a result, plaintiff's safety cell placement

13  was not properly approved, and this failure was a proximate cause of plaintiff's harm.  (*Id.*)

14  (citing Doc. No. 114 at ¶ 84.)  The court notes that § 1055 is only listed in the SAC in a paragraph

15  with many other statutes under the heading of plaintiff's negligence claim and not under

16  plaintiff's supervisory liability claim.  In any case, the duty imposed on defendant Powers by

17  § 1055 is to "develop written policies and procedures governing safety cell use . . . ."  Cal. Code.

18  Regs. Tit. 15 § 1055 (2019).  Here, however, there are no allegations in the SAC that defendant

19  Powers failed to develop written policies and procedures governing safety cell use.  Nor are they

20  any other allegations, beyond merely conclusions, that defendant Powers implemented a

21  constitutionally deficient policy.

22       For these reasons, the court will dismiss plaintiff's fourth claim against defendant Powers.

23       2.    Plaintiff's State Law Claims Against Defendant Powers

24       The County defendants move to dismiss plaintiff's state law claims brought against

25  defendant Powers, arguing that they too fail to state a cognizable claim because plaintiff has

26

27  [8]  The California Code of Regulations Title §§ 1006 and 1055 were amended on January 1, 2023.
     For purposes of this order, all citations refer to the 2019 version of the California Code of
28   Regulations, which were in effect at the time relevant to plaintiff's claims.

1   failed to allege that defendant Powers was personally involved in the assessment of, or was even

2   aware of, plaintiff's need for medical care.  (Doc. No. 149-1 at 11.)  Specifically, the County

3   defendants seek to dismiss plaintiff's state law claims for negligence (tenth claim) and failure to

4   perform a mandatory duty in violation of California Government Code § 815.6 (twelfth claim).

5   (*Id.*)  The court will address each claim in turn below.

6               a.      Negligence (Tenth Claim)

7           To state a claim for negligence, a plaintiff must allege:  "(1) a legal duty to use reasonable

8   care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's

9   injury."  *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998).  California has

10   recognized that "there is a special relationship between jailer and prisoner which imposes a duty

11   of care on the jailer to the prisoner."  *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231,

12   252–53 (2008).  Thus, for example, "[a] deputy may be held legally responsible for a detainee's

13   injuries if the deputy's actions or inaction are the moving force behind a series of events that

14   ultimately lead to a foreseeable harm being suffered, even if other intervening causes contribute

15   to the harm."  *Campos v. Cnty. of Kern*, No. 1:14-cv-01099-DAD-JLT, 2017 WL 915294, at *14

16   (E.D. Cal. Mar. 7, 2017) (citing cases), *aff'd sub nom. K. E. C. ex rel. Gonzalez v. Cnty. of Kern*,

17   788 F. App'x 506 (9th Cir. 2019).

18           In his SAC, plaintiff alleges that defendant Powers had a duty to exercise reasonable care

19   with respect to evaluating the need for and obtaining of medical, psychiatric, and/or mental care

20   for plaintiff and that defendant Powers breached that duty.  (Doc. No. 114 at ¶¶ 228, 230.)

21   Plaintiff also alleges that defendant Powers is liable for "plaintiff's injuries pursuant to, but not

22   limited to, California Government Code §§ 815.2, 820, 844.6, 845.6, 855.6, California Welfare

23   and Institutions Code §§ 5000, *et seq.*, Placer County 5150 Emergency Response Protocol,

24   California Penal Code § 4011.6 and the Minimum Standards for Local Detention Facilities under

25   15 CCR §§ 100, *et seq.*, including but not limited to §§ 1030, 1050, 1052, 1055, 1056, 1200,

26   1206, 1207, 1208, 1209, and 1217."  (*Id.* at ¶ 235.)

27           In his opposition to the motion to dismiss this claim, plaintiff clarifies that the duty

28   imposed on defendant Powers by California Code of Regulations § 1055 forms the basis of his

negligence claim.  (Doc. No. 160 at 14–15.)[9]  He states, "[plaintiff]'s claims against [defendant] Powers for negligence . . . rest in [defendant] Powers'[s] failure to ensure that [plaintiff] received the mental health treatment that California regulation required him to facilitate once he was placed in a safety cell."  (*Id.* at 16.)  Plaintiff also argues that "[defendant] Powers as facility commander is responsible by policy[10] and by the California Code of Regulations for approving [plaintiff's] placement in a safety cell and ensuring that [plaintiff] receives mental health evaluations every 12 hours once he is so placed."  (*Id.* at 14.)  However, as previously stated, the duty established in § 1055 is to "develop written policies and procedures governing safety cell use," Cal. Code. Regs. Tit. 15 § 1055 (2019), and plaintiff's SAC fails to allege that defendant Powers failed to develop such policies.

Furthermore, as defendant Powers highlights in his reply (Doc. No. 163 at 2), plaintiff's interpretation of what § 1055 requires is incorrect in various respects.  In his opposition to the County defendants' motion to dismiss, plaintiff argues that per that regulation, defendant Powers, as facility commander, may only "delegate authority to place an incarcerated person in a safety cell to a physician," Cal. Code. Regs. Tit. 15 § 1055 (2019), and he contends that this regulation was violated because no physician ever saw or evaluated plaintiff before he was placed into a safety cell, (Doc. No. 160 at 14).  However, as defendant Powers points out in reply (Doc. No. 163 at 2), the regulation states, "An inmate shall be placed in a safety cell only with the approval of the facility manager or designee, *or responsible health care staff* . . . ."  Cal. Code. Regs. Tit. 15 § 1055 (2019) (emphasis added).  Section 1006 defines "Responsible health care staff" as "an individual who is qualified by education, training, licensure/regulation, and/or facility privileges (when applicable) who performs a professional service within their scope of practice and in accordance with assigned duties."  Cal. Code. Regs. Tit. 15 § 1006 (2019).  Thus, defendant Powers was not in charge of personally placing plaintiff into a safety cell or,

---

[9]  The court will not engage in an analysis of all of the statutes listed in paragraph 235 of plaintiff's SAC, since the parties decided not to address many of those provisions in their briefs, and plaintiff, in his opposition, relies only on California Code of Regulations § 1055 in making arguments in support of his negligence claim.

[10]  Plaintiff does not cite to any specific jail policy that was allegedly violated.

apparently, having a physician place him into a safety cell pursuant to California Code of Regulations § 1055, as plaintiff argues. (*See* Doc. No. 160 at 14.) Furthermore, in the SAC, plaintiff alleges that on November 29, 2019, correctional staff members led plaintiff to a medical examination room where defendant Ereso, a registered nurse, evaluated him and then placed plaintiff on suicide watch, which led to plaintiff's placement into a safety cell and the provision of a suicide prevention gown. Thus, contrary to plaintiff's arguments (*see* Doc. No. 160 at 15–16), the SAC does not allege a breach in defendant Powers's duty of care in the way that plaintiff was placed in a safety cell.

In addition, as defendant Powers point out in reply, nowhere in § 1055 does there appear to be a requirement that a mental health evaluation be performed every twelve hours. (Doc. No. 163 at 2.) The only portion of § 1055 discussing "mental health" is the following sentence: "The facility manager, designee or responsible health care staff shall obtain a mental health opinion/consultation with responsible health care staff on placement and retention, which shall be secured within 12 hours of placement." Cal. Code. Regs. Tit. 15 § 1055 (2019). Defendant Powers argues that, therefore, under the regulation, an individual's placement into the safety cell and a mental health consultation within twelve hours of such placement must be approved and obtained by a responsible health care staff member, and that these requirements are alleged to have occurred in this case. (Doc. No. 163 at 3.) The court agrees. Within the SAC, plaintiff appears to allege that after[11] he was placed into the safety cell, a licensed therapist—defendant Phinney—performed a medical examination of plaintiff and approved of his placement in the safety cell. Although plaintiff does not allege that the medical evaluation with defendant Phinney occurred within twelve hours of his placement in the safety cell, he also does not allege that it did not occur within twelve hours of his placement.

/////

---

[11]  From the allegations of the SAC, it is unclear whether defendant therapist Phinney's medical examination took place after plaintiff was placed in the safety cell. Nevertheless, it appears that plaintiff is alleging that was the case, since the events alleged in the SAC generally appear chronological, and the allegation that plaintiff was placed in a safety cell appears in paragraph 75, while the allegation that defendant Phinney performed a medical evaluation of him appears in paragraph 77. (Doc. No. 114 at ¶¶ 75, 77.)

1    In any event, to the extent that plaintiff's negligence claim brought against defendant

2  Powers is based on his supervisory role, public employees cannot be held vicariously liable under

3  California law solely for the conduct of others.  *See* Cal. Gov't Code § 820.8 ("Except as

4  otherwise provided by statute, a public employee is not liable for an injury caused by the act or

5  omission of another person.  Nothing in this section exonerates a public employee from liability

6  for injury proximately caused by his own negligent or wrongful act or omission."); *see also*

7  *Milton v. Nelson*, 527 F.2d 1158, 1159 (9th Cir. 1975) ("Supervisory personnel whose personal

8  involvement is not alleged may not be held responsible for the acts of their subordinates under

9  California law.").  Thus, plaintiff cannot hold defendant Powers liable based solely on his

10  supervisory role as corrections commander for the SPCF.  *See Beverly*, 2018 WL 4050743, at *7

11  ("Plaintiffs' counsel argued that because an employee did not supervise decedent as required by

12  policy on the night decedent committed suicide, [the defendant], as warden, was liable for

13  negligence.  Plaintiffs' counsel went on to argue that the warden may be liable for any harm that

14  results from the negligence of prison employees.  To so hold would amount to a finding of strict

15  liability for all actionable conduct that occurs in the prison.  That is not the law.  As the warden of

16  a large prison, [the defendant] was not an ensurer of the safety of every inmate.").  Instead,

17  plaintiff must allege sufficient facts to give rise to a plausible inference that defendant Powers's

18  own acts as a supervisor proximately caused plaintiff's injury.  *See id.* (stating that "plaintiffs

19  must allege sufficient facts to allege that [the warden defendant's] own acts as a supervisor

20  proximately caused the injury"); *cf. Johnson v. Baca*, No. 1:30-cv-04496-MMM-AJW, 2014 WL

21  12588641, at *17 (C.D. Cal. Mar. 3, 2014) (denying the defendants' motion to dismiss because

22  the plaintiff had alleged facts that, if proved, would give rise to liability for injury proximately

23  caused by the Sheriff's own negligent or wrongful act or omission).

24    As previously discussed, there are no factual allegations in the SAC from which the court

25  could plausibly infer that defendant Powers was aware of plaintiff's serious need for medical

26  intervention or was aware of or did not adequately investigate his subordinates' alleged failure to

27  monitor and supervise detainees such as plaintiff.  Consequently, the court cannot discern the

28  specific actions or omissions by defendant Powers that, if proven, would constitute a breach of his

28

1  duty to plaintiff.  *See Beverly*, 2018 WL 4050743, at *7; *Lapachet v. Cal. Forensic Med. Grp.,*

2  *Inc.*, 313 F. Supp. 3d 1183, 1198 (E.D. Cal. 2018).  Therefore, plaintiff's negligence claim against

3  defendant Powers must be dismissed as well.

4                          b.       Failure to Perform a Mandatory Duty (Twelfth Claim)

5           As discussed above, the plain language of Government Code § 815.6 demonstrates that it

6  pertains to the liability of a public entity, not to the liability of an individual.  Accordingly,

7  plaintiff's twelfth claim asserted against defendant Powers will also be dismissed.

8               3.       Plaintiff's § 1983 Claims Against the County

9           It is well-established that "a municipality cannot be held liable *solely* because it employs a

10  tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat*

11  *superior* theory."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Bd. of Cnty.*

12  *Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  To state a *Monell* claim against a municipality,

13  plaintiff must allege facts demonstrating "that an 'official policy, custom, or pattern' on the part

14  of [the municipality] was 'the actionable cause of the claimed injury.'"  *Tsao v. Desert Palace,*

15  *Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010,

16  1022 (9th Cir. 2008)); *see also Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir.

17  2016) (explaining that to establish municipal liability under § 1983, a plaintiff must show a direct

18  causal link between the municipal policy or custom and the alleged constitutional violation).

19           The Ninth Circuit has recognized four theories for establishing municipal liability under

20  *Monell*:  "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise,

21  or discipline; or (4) a decision or act by a final policymaker."  *Horton by Horton v. City of Santa*

22  *Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).  Here, plaintiff asserts three claims predicated on

23  two of these theories.  Specifically, plaintiff's fifth claim is for *Monell* liability predicated on a

24  "pervasive practice or custom" while plaintiff's third and fourth claims pursue *Monell* liability

25  based upon an alleged failure to train and failure to supervise, respectively.

26  /////

27  /////

28  /////

a.      Unconstitutional Pervasive Practice and Custom (Fifth Claim)

Plaintiff alleges that the County has a custom and practice of denying adequate health care to persons with serious mental illnesses by confining them in isolation rather than providing them the care they require.  (Doc. No. 114 at ¶ 76.)

To establish liability under the pervasive custom and policy theory, a plaintiff must allege and show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)).  "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*[12]

The court acknowledges that "[t]he line between 'isolated or sporadic incidents' and 'persistent and widespread conduct' is not clearly delineated." *Warkentine v. Soria*, No. 1:13-cv-01550-LJO-MJS, 2014 WL 2093656, at *6 (E.D. Cal. May 19, 2014); *see also Gonzalez v. Cnty. of Merced*, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017) ("It is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim.").  As previously observed, "[p]erhaps the most that can be said is that one or two incidents ordinarily cannot establish a policy or custom, while more incidents may permit the inference of a policy, taking into account their similarity, their timing, and subsequent actions by

/////

---

[12]  At the hearing on the pending motions, plaintiff's counsel argued that the County's reliance on *Trevino* in its pending motion to dismiss as well as the court's reliance on *Trevino* in its prior order granting a motion to dismiss are problematic because *Trevino* was decided at the summary judgment stage.  However, the crux lies in whether plaintiff can allege the necessary elements of his claim, not in his ability to prove it.  The Ninth Circuit's decision in *Trevino* lays out the requirements of this claim.  *See Bonner v. Cnty. of Los Angeles*, No. 15-cv-08885-GW-SSX, 2016 WL 11743232, at *4 (C.D. Cal. May 26, 2016) ("[The plaintiff] also attempts to avoid the Moving Defendants' favored case of [*Trevino*], simply because of the fact that *Trevino* was a decision at the summary judgment stage.  But *Trevino* simply acknowledged the legal contours and requirements of a claim; its importance here has nothing to do with its summary judgment-setting.").

1  the municipality." *J.M. ex rel. Rodriguez v. Cnty. of Stanislaus*, No. 1:18-cv-01034-LJO-SAB,

2  2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018).

3      Here, plaintiff cites in his SAC three examples of the County denying adequate health care

4  to detainees who are at serious risk of self-harm, with one incident occurring in 2007,[13] and two

5  occurring in 2016. (*Id.* at ¶ 96.)[14]  These three alleged incidents occurred over a nine-year period,

6  with the last occurring approximately three years before the alleged incident in this case took

7  place. (*See id.*)  The court finds that the prior but dated incidents cited by plaintiff, even if

8  proven, are not sufficient to give rise to a plausible inference that there is a permanent and well-

9  settled policy of denying adequate health care to persons with serious mental illnesses by

10  confining them in isolation rather than providing them the care they require. *See Barber v. Cnty.*

11  *of Orange*, No. 21-cv-00031-CJC-JDE, 2021 WL 2981015, at *2 (C.D. Cal. Apr. 29, 2021)

12  (dismissing the plaintiff's *Monell* claim, finding that "[t]hree incidents over a five-year period are

13  too isolated and sporadic to support a long-standing policy in violation of *Monell*").

14      In addition, plaintiff alleges that the County was aware or constructively aware of the

15  failures of its contracted mental healthcare provider "CFMG a.k.a. Wellpath" to provide adequate

16  mental health care in jails. (Doc. No. 114 at ¶¶ 97–99.)  Plaintiff alleges that CFMG has a

17  longstanding and well-publicized custom and practice of failing to provide adequate mental

18  health care for acutely psychotic persons or persons at imminent risk of self-harm, including by

19  failing to send them to the appropriate hospitalization or therapeutic setting. (*Id.* at ¶ 98.)  In their

20  reply, the County defendants persuasively argue that those incidents are irrelevant and that simply

21  contracting with CFMG is not an obviously deficient county policy likely to cause a

---

[13]  In his SAC, plaintiff asserts that the case *Rhodes v. Placer County*, 2:09-cv-00489-MCE-KJN (E.D. Cal.) ("*Rhodes*") was filed in 2009. (Doc. No. 114 at ¶ 96(a).)  Although the original complaint in *Rhodes* was filed in 2009, according to the second amended complaint, the events at issue there were alleged to have occurred in 2007. *See Rhodes v. Placer County*, 2:09-cv-00489-MCE-KJN, Doc. No. 66 (E.D. Cal. Apr. 27, 2010).

[14]  Defendants argue that one of those examples—*Coleman v. Placer County*, No. 2:17-cv-01579 (E.D. Cal.)—did not involve any allegations of deliberate indifference to medical needs. (Doc. No. 163 at 4.)  Because the court finds that these incidents are too isolated and sporadic to support plaintiff's allegation of a long-standing policy in violation of *Monell*, the court need not analyze this argument.

constitutional injury, particularly in light of lack of alleged complaints regarding similar incidents within Placer County jails.  (*See* Doc. No. 163 at 5.)

Accordingly, the court will dismiss plaintiff's fifth claim brought against the County.  The court notes, however, that dismissal of this claim is without prejudice.  If plaintiff gains information that, if proven, would plausibly shows that a municipal custom existed, plaintiff may move to amend upon a showing of good cause.

> b.  Failure to Train and Supervise (Third and Fourth Claims)

Under *Monell*, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  The plaintiff "must demonstrate a 'conscious' or 'deliberate' choice on the part of a municipality in order to prevail on a failure to train claim."  *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008) (citation omitted).  "Under this standard, [the plaintiff] must allege facts to show that the [municipality] 'disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights.'"  *Flores*, 758 F.3d at 1159 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.").  "[T]he identified deficiency in a [municipality's] training program must be closely related to the ultimate injury."  *Harris*, 489 U.S. at 391; *see also Riggi v. City of Placerville*, No. 2:11-cv-00753-MCE, 2011 WL 6396439, at *5 (E.D. Cal. Dec. 19, 2011) ("The 'closely related' or 'moving force' requirement is akin to the tort law causation standard of proximate cause.") (citing *Harper*, 533 F.3d at 1026).  In addition, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference' for purposes of failure to train."  *Connick*, 563 U.S. at 62 (citation omitted); *see also Flores*, 758 F.3d at 1159 ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train, though there exists a narrow range of circumstances in which a pattern of similar

1    violations might not be necessary to show deliberate indifference.") (citations, internal quotation

2    marks, and brackets omitted).  The same standard of deliberate indifference applies to failure to

3    supervise claims.  *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) ("We see

4    no principled reason to apply a different standard to inadequate supervision.").

5            In his SAC, plaintiff alleges that the County failed

6                to provide adequate supervision, training, control, and/or discipline
                 to their law enforcement officers, employees, agents, representatives,
7                contractors and other personnel in providing individuals with
                 adequate medical, mental, and/or psychiatric evaluation, care, and
8                treatment including but not limited when to place a prisoner who is
                 at imminent risk of self-harm and/or suicide on a California Welfare
9                and Institutions Code § 5150 hold, when and how to provide mental
                 health treatment rather than using safety cells, and when and how it
10               is appropriate to restrain a prisoner who is at imminent risk of self-
                 harm and/or suicide[.]

11

12   (Doc. No. 114 at ¶ 93(b).)

13           In their motion to dismiss, the County defendants argue that plaintiff has failed to allege a

14   pattern of similar constitutional violations, and that without such a pattern, defendants could not

15   have been put on actual or constructive notice of the need for specific training or supervision to

16   avoid violating the Constitution.  (Doc. No. 149-1 at 16.)  The court agrees that plaintiff has

17   alleged no such pattern here.  In his opposition, in an apparent attempt to engage with this

18   argument advanced by the County defendants, plaintiff asserts that "while [plaintiff] pleads other

19   incidents of the County using isolation rather than provide necessary treatment, [plaintiff's]

20   pleading burden is to give the County fair notice of the claims for which it will have to defendant

21   itself."  (Doc. No. 160 at 20.)  However, since the Supreme Court's decisions in *Twombly* and

22   *Iqbal*, fair notice requires the pleading of facts that creates a plausible right to relief.  *See Iqbal*,

23   556 U.S. at 678 (stating that a plaintiff must set forth "sufficient factual matter, accepted as true,

24   to 'state a claim to relief that is plausible on its face'") (quoting *Twombly*, 550 U.S. at 555); *see*

25   *also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (explaining that the Supreme

26   Court's decisions in *Twombly* and *Iqbal* represent a departure from the well-established tradition

27   of notice pleading in the federal courts).  Here, as previously discussed, the alleged incidents of

28   /////

1  the County denying adequate health care to detainees who are at serious risk of self-harm are too

2  isolated and sporadic to establish an unconstitutional policy if proved.

3  　　　In his opposition to the County defendants' motion to dismiss, plaintiff argues that "[s]o

4  too may a single incident form the basis for a plaintiffs' failure to train claim." (Doc. No. 160 at

5  20.) However, a valid failure-to-train claim that is not based on a preexisting pattern of violations

6  has been recognized as "rare." *Connick*, 563 U.S. at 64. Here, plaintiff fails to identify any facts

7  supporting the conclusion that his claim falls within the "narrow range of circumstances" where a

8  pattern of violations need not be pleaded.[15] *See Flores*, 758 F.3d at 1160 (affirming dismissal for

9  failure to state a claim, reasoning that "[t]here is no basis from which to conclude that the

10  unconstitutional consequences of failing to train police officers not to commit sexual assault are

11  so patently obvious that the County or Baca were deliberately indifferent").

12  /////

13

14  [15] In his opposition, plaintiff cites to the decision in *Harris,* 489 U.S. at 381–82, as holding that "City's failure to train its officers on the obvious consequences of failing to summon appropriate

15  medical care for detainees supported failure to train claim." (Doc. No. 160 at 20.) However, the Supreme Court in *Harris* vacated the Sixth Circuit's decision on the failure to train claim, and

16  remanded the case, finding that the jury instructions on that claim fell below the "deliberate indifference" standard of proof required for liability to attach and that "the evidence in the record

17  now does not meet the standard of § 1983 liability . . . ." *Harris,* 489 U.S. at 392. Justice O'Connor, in her concurring opinion, stated that "[t]he claim in this case—that police officers

18  were inadequately trained in diagnosing the symptoms of emotional illness—falls far short of the kind of 'obvious' need for training that would support a finding of deliberate indifference to

19  constitutional rights on the part of the city." (*Id.* at 397–98) (O'Connor, J., concurring in part and dissenting in part). Furthermore, plaintiff's argument that self-harm is a highly predictable

20  consequence of failing to train officers on providing individuals with adequate mental evaluation, such as a prisoner who is at risk of self-harm or suicide, has previously been addressed by a Ninth

21  Circuit decision, which accepted similar reasoning to that advanced by plaintiff here, but was then vacated by the Supreme Court in light of *Connick v. Thompson*, 563 U.S. 51 (2011). *See Conn v.

22  City of Reno*, 591 F.3d 1081, 1103 (9th Cir. 2010), *cert. granted, judgment vacated*, 563 U.S. 915 (2011), *and opinion partially reinstated*, 658 F.3d 897 (9th Cir. 2011). Specifically, the Ninth

23  Circuit in *Conn* held that "The failure to train officers on how to identify and when to report suicide risks produces a 'highly predictable consequence': that police officers will fail to respond

24  to serious risks of suicide and that constitutional violations will ensue." *Id.* On remand, the Ninth Circuit, considering its opinion in light of the Supreme Court's decision in *Connick*,

25  reinstated the "opinion at 591 F.3d 1081 (9th Cir. 2010)," but stated that "Parts III(C)(1) and III(C)(2) of the opinion will remain vacated." *Conn v. City of Reno*, 658 F.3d 897, 897 (9th Cir.

26  2011). The vacated portions of the opinion pertained to the obligation to properly train employees and implement policies on a municipal level. *See Conn*, 591 F.3d at 1103–04.

27

28

1    For these reasons, the court will dismiss plaintiff's third and fourth claims asserted against

2    the County.

3        4.    Plaintiff's State Law Claims Against the County

4    California Government Code § 844.6, titled "Injuries by and to prisoners," provides that

5    "a public entity is not liable for . . . an injury proximately caused by any prisoner . . . [or] [a]n

6    injury to any prisoner." Cal. Gov't Code § 844.6(a)(1)–(2); *see also Roy v. Cnty. of Los Angeles*,

7    114 F. Supp. 3d 1030, 1038 (C.D. Cal. 2015) ("[S]ection 844.6 accords broad public entity

8    immunity . . . ."). The statute's reference to "any prisoner" includes jail detainees. *See White v.*

9    *L.A. Cnty. Sheriff's Dep't*, No. 19-cv-04669-DSF-RAO, 2020 WL 5289848, at *10 (C.D. Cal.

10   July 17, 2020) ("California Government Code § 844.6 generally makes public entities immune

11   from liability for an injury to 'any prisoner,' which includes jail detainees.") (citing Cal. Gov't

12   Code § 844.6). One statutory exception to § 844.6's broad immunity for public entities is the

13   failure to summon medical care in accordance with § 845.6. *See* Cal. Gov't Code § 845.6.

14   Specifically, § 845.6 provides that public entities remain vicariously liable for public employees

15   acting within the scope of their employment if the employee "knows or has reason to know that

16   the prisoner is in need of immediate medical care and he fails to take reasonable action to

17   summon such medical care." *Id.*

18   In its motion to dismiss, the County argues that plaintiff has failed to allege facts

19   sufficient to state a claim under § 845.6. (Doc. No. 149-1 at 16.) The County contends that

20   because plaintiff has failed to allege a claim under § 845.6, it is immune from liability for

21   plaintiff's remaining claims brought against it, pursuant to § 844.6. (*Id.* at 19.) However, the

22   court notes that defendants Burgess and Swinney do not move to dismiss plaintiff's § 845.6 claim

23   against them. (*See* Doc. No. 164-1.) Therefore, as the County conceded at the hearing on the

24   pending motion, the County is not immune from suit and can remain vicariously liable for the

25   alleged acts of those employees. Accordingly, to the extent that the remaining state law claims

26   are predicated on defendants Burgess and Swinney's failure to summon medical care, defendant

27   County can likewise be held liable as to those claims. Therefore, the court will deny the County's

28   motion to dismiss plaintiff's state law claims asserted against it.

1  **C.     Leave to Amend**

2          Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

3  P. 15(a).  Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure

4  deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

5  leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

6          The court has considered the *Foman* factors and finds justice does not require granting

7  plaintiff leave to amend.  With respect to the allegations brought against the County defendants,

8  plaintiff has failed to correct the deficiencies the court identified in the previous order granting a

9  motion to dismiss brought on behalf of these defendants.  Based on this failure, the court

10  concludes that granting leave to amend would be futile and would be unduly prejudicial to those

11  defendants.  *See, e.g., Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 801 (N.D. Cal. 2019)

12  ("Plaintiff's claim is dismissed with prejudice because granting Plaintiff an additional opportunity

13  to amend his complaint would be futile and unduly prejudicial because Plaintiff already had

14  notice of this deficiency and failed to cure it.") (citing *Leadsinger, Inc. v. BMG Music Publ'g*,

15  512 F.3d 522, 532 (9th Cir. 2008)); *Shetty v. SunTrust Mortg.*, No. 13-cv-00820-AG-E, 2013 WL

16  12244326, at *4 (C.D. Cal. Sept. 9, 2013) ("It would be an 'exercise in futility' to allow Plaintiff

17  to amend his Complaint for a second time because Plaintiff has already been informed of

18  deficiencies in his Complaint and failed to correct them.") (quoting *Steckman v. Hart Brewing*,

19  143 F.3d 1293, 1298 (9th Cir. 1998)), *aff'd sub nom. Shetty v. SunTrust Mortg., Inc.*, 696 F.

20  App'x 830 (9th Cir. 2017).  Therefore, to the extent that the court is granting the County

21  defendants' motion to dismiss, the claims will be dismissed without leave to amend.

22          Although plaintiff has not had an opportunity to amend claims brought against the sheriff

23  defendants, plaintiff has been provided the opportunity to amend his complaint twice now and has

24  failed to cure the pleading deficiencies that apply similarly to all defendants.[16]  At the hearing on

25  _____

26  [16]  This is because the pleading deficiencies were noted by the court in its order addressing the
    earlier motion to dismiss brought on behalf of the County defendants.  Notably, the sheriff

27  defendants have not before this had the chance to file a motion to dismiss, even though they were
    named in plaintiff's first amended complaint, because plaintiff failed to serve them until the court

28  directed him to do so.

1    the pending motions, plaintiff's counsel explained that plaintiff did not amend the allegations

2    against the sheriff defendants because he did not want to exceed the scope of the leave to amend

3    granted by this court.  However, plaintiff's counsel could have sought clarification from the court

4    or filed a motion for leave to amend his allegations against those defendants.  Instead, the sheriff

5    defendants had to expend resources in filing a motion to dismiss, which plaintiff opposed, despite

6    having just been notified by the court's order addressing the county defendants' motion to dismiss

7    that those allegations would not suffice.

8         Because of the futility of amendment and prejudice, to the extent that the court is granting

9    the sheriff defendants' motion to dismiss, the claims will also be dismissed without leave to

10   amend.[17]

11                                **CONCLUSION**

12       1.      The sheriff defendants' motion to dismiss (Doc. No. 164) is granted in part and

13               denied in part as follows:

14               a.      The motion is denied as to plaintiff's fourteenth claim for a violation of the

15                       Bane Act brought against defendants John Burgess and Karl Swinney;

16               b.      The motion is otherwise granted;

17                       i.      All claims against defendants Kimberly Stuhr, Brandon Luperini,

18                               Nathaniel Giovanetti, Thomas Turner, Megan Burns, David Smith,

19                               Ben Glau, Claudia Chaidez, Sean Robinson, Jarod Collins, Jesse

20                               Coffer, Jeffrey Bilodeau, Richard Hillman, and John Savage are

21                               dismissed without leave to amend;

22   /////

23   /////

24   /////

25

26   [17]  The court notes that plaintiff's allegations surrounding this tragic event are obviously very
     serious and address actions that took place now over four years ago.  The original complaint was
27   filed in this court on November 20, 2020.  (Doc. No. 1.)  This is now the third court order
     addressing rounds of motions to dismiss (*see* Doc. Nos. 49, 110), in addition to an order denying
28   a motion for summary judgment (Doc. No. 111).

ii.  All claims against defendants John Burgess and Karl Swinney—except for the 42 U.S.C. § 1983 claims for deliberate indifference and failure to protect from harm, and the state law claims for failure to summon medical care, negligence, and violation of the Bane Act—are dismissed without leave to amend;

c.  Because all claims against defendants Kimberly Stuhr, Brandon Luperini, Nathaniel Giovanetti, Thomas Turner, Megan Burns, David Smith, Ben Glau, Claudia Chaidez, Sean Robinson, Jarod Collins, Jesse Coffer, Jeffrey Bilodeau, Richard Hillman, and John Savage have been dismissed without leave to amend, these defendants are dismissed from this action;

2.  The County defendants' motion to dismiss (Doc. No. 149) is granted in part and denied in part as follows:

a.  The motion is denied as to plaintiff's state law claims (eleventh through fourteenth claims) brought against defendant County of Placer, to the extent that those claims are based on defendants John Burgess and Karl Swinney failing to summon medical care;

b.  The motion is otherwise granted;

i.  All claims brought against defendant David Powers are dismissed without further leave to amend;

ii.  All federal claims brought against defendant County of Placer are dismissed without further leave to amend;

c.  Because all claims brought against defendant David Powers have been dismissed without leave to amend, he is dismissed from this action;

3.  The Clerk of the Court is directed to update the docket to reflect that defendants David Powers, Kimberley Stuhr, Brandon Luperini, Nathaniel Giovanetti, Thomas Turner, Megan Burns, David Smith, Ben Glau, Claudia Chaidez, Sean Robinson, Jarod Collins, Jesse Coffer, Jeffrey Bilodeau, Richard Hillman, and John Savage have been terminated as named defendants from this action;

4.     Defendants County of Placer, John Burgess, and Karl Swinney are directed to file their answer to the claims that remain against them within twenty-one (21) days from the date of entry of this order; and

5.     The court acknowledges that the previously assigned district judge issued a scheduling order at the outset of this case.  (*See* Doc. No. 5.)  However, the undersigned has different scheduling practices and intends to issue a modified scheduling order accordingly.  To facilitate the issuing of an updated scheduling order, within twenty-eight (28) days from the date of entry of this order, the parties shall file a joint status report that includes the Rule 26(f) discovery plan, with all named parties participating in the preparation and completion of the report.  The status report shall address the following matters:

a.     the statutory bases for jurisdiction and venue;

b.     anticipated discovery and the scheduling of discovery, including:

   i.     what changes, if any, should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made, and whether further discovery conferences should be held;

   ii.     the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases;

   iii.     what changes, if any, should be made in the limitations on discovery imposed under the Civil Rules and what other limitations, if any, should be imposed;

   iv.     the timing of the disclosure of expert witnesses and information required by Rule 26(a)(2); and

   v.     proposed dates for discovery cut−off;

c.     contemplated dispositive or other motions and a proposed date by which all non-discovery motions shall be heard;

39

d. methods that can be used from the outset to avoid unnecessary proof and cumulative evidence, and anticipated limitations or restrictions on the use of testimony under Federal Rule of Evidence 702;

e. a proposed date for final pretrial conference;

f. a proposed date for trial, estimated number of days of trial, and whether any party has demanded a jury;

g. appropriateness of special procedures such as reference to a special master or agreement to try the matter before the assigned magistrate judge pursuant to 28 U.S.C. § 636(c);

h. proposed modification of standard pretrial procedures because of the simplicity or complexity of the case;

i. whether the case is related to any other case pending in this district, including the bankruptcy court of this district;

j. optimal timing and method for settlement discussions, including whether a court-convened settlement conference should be scheduled, whether in the case of a jury trial the parties will stipulate to the trial judge acting as a settlement judge, and the parties' positions with respect to Voluntary Dispute Resolution (VDRP) as required by Local Rule 271(d); and

k. any other matters that may be conducive to the just and expeditious disposition of the case.

IT IS SO ORDERED.

Dated:   **February 27, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE